# United States Court of Appeals for the Federal Circuit

05-3043

JOHN F. ROBERTO,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

Clayton C. Ikei, of Honolulu, Hawaii, argued for petitioner.

Dawn S. Conrad, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director. Of counsel on the brief was Monte E. Crane, Attorney, Office of General Counsel, Department of the Navy, of San Diego, California.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3043

JOHN F. ROBERTO,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

_____

DECIDED: March 13, 2006

_____

Before RADER, Circuit Judge, ARCHER, Senior Circuit Judge, and SCHALL, Circuit Judge.

SCHALL, Circuit Judge.

John F. Roberto petitions for review of the final decision of the Merit Systems Protection Board ("Board") that dismissed, for lack of jurisdiction, his appeal to the Board in which he claimed that, in the course of a reduction in force ("RIF") action, the Department of the Navy ("Navy" or "agency") violated his reemployment priority rights. Mr. Roberto claimed that the Navy failed to afford him the rights to which he was entitled under the Department of Defense ("DOD") reemployment priority list ("RPL") program.

<u>See</u> 5 C.F.R. § 330.201(a) (2005).[1]  Following a hearing, the administrative judge ("AJ") to whom the appeal was assigned dismissed it for lack of jurisdiction.  <u>Roberto v. Dep't of the Navy</u>, No. SE-0330-01-0211-I-1, slip op. (M.S.P.B. Oct. 22, 2001) ("<u>Initial Decision</u>").  The AJ concluded that, while the Board did have authority to adjudicate claims arising under DOD's RPL, it lacked authority to adjudicate claims arising under DOD's priority placement program ("PPP"), which the AJ found was the program under which Mr. Roberto had enrolled.  The AJ determined that the Board lacked jurisdiction with respect to Mr. Roberto's claims under the PPP because the Office of Personnel Management ("OPM") had not given its concurrence to the program.  <u>Id.</u>  Pursuant to 5 C.F.R. § 1200.3(b), the initial decision became the final decision of the Board when the two sitting Members of the Board were unable to agree on a ruling in response to Mr. Roberto's petition for review.  <u>Roberto v. Dep't of the Navy</u>, 97 M.S.P.R. 156 (2004) ("<u>Final Decision</u>").  We affirm.

BACKGROUND

I.

We begin with the regulatory scheme that frames this case.  Under the Veterans' Preference Act of 1944, Pub. IL. No. 78-359, 58 Stat. 387 (codified at 5 U.S.C. §§ 2108, 3309-3320), "[a] preference eligible who has been separated or furloughed without delinquency or misconduct, on request, is entitled to have his name placed on appropriate registers and employment lists for every position for which his qualifications have been established."  5 U.S.C. § 3315(a) (2000).  OPM has adopted regulations to

---

[1]  The relevant provisions of the Code of Federal Regulations have not been amended since 2001, when Mr. Roberto was separated by the RIF.  Thus, unless otherwise indicated, all references are to the 2005 version of the Code of Federal Regulations.

implement the requirements of section 3315. The regulations are codified at 5 C.F.R. §§ 330.201-330.209.

Sections 330.201-330.208 require that each agency maintain an RPL and establish guidelines for the operation of its RPL. Under section 330.201(a), employees entered on an RPL enjoy, at a minimum, "priority consideration over certain outside job applicants." The regulations provide that an agency may not make a final commitment to an individual not on the RPL to fill a permanent or temporary competitive service position when a qualified individual is available on the agency's RPL, unless the first individual is on the agency's rolls. 5 C.F.R. §§ 330.205(b), (c).

Section 330.201(b) requires that each agency "establish and maintain a reemployment priority list for each commuting area in which it separates eligible competitive service employees by RIF . . . , except as provided by paragraph (c) of this section." The section 330.201(c) exception states:

> An agency need not maintain a distinct RPL for employees separated by reduction in force if the agency operates a placement program for its employees and obtains OPM concurrence that the program satisfies the basic requirements of this subpart. The intent of this provision is to allow agencies to adopt different placement strategies that are effective for their particular programs yet satisfy legal entitlements to priority consideration in reemployment.

Thus, the regulations require that an agency maintain either an RPL or an alternate program that has obtained OPM concurrence or, put another way, approval, as discussed in Part III of the DISCUSSION infra.

Although agencies must maintain an RPL under sections 330.201(a) and (b) or an equivalent program under section 330.201(c), the regulations do not mandate that employees participate in available agency reemployment programs. Section 330.202

05-3043                                    3

clarifies that placement on an agency RPL is not automatic. In order to be entered on an RPL, an employee must first complete an application within the time frame set forth in section 330.202(a)(1). Section 330.202(a)(1) provides:

> To be entered on the RPL, an eligible employee under § 330.203 must complete an application . . . . Registration may take place as soon as a specific notice of separation under part 351 of this chapter, or a Certification of Expected Separation as provided in § 351.807 of this chapter, has been issued. The employee must submit the application within 30 calendar days after the RIF separation date. An employee who fails to submit a timely application is not entitled to be placed on the RPL.

Even though an employee is not entitled to automatic entry on the RPL, he or she is entitled to receive information from the agency that may aid the employee in applying for the RPL. Pursuant to 5 C.F.R. § 330.203(b), at the time employees receive notices of separation or Certifications of Expected Separation ("CES")s, "the agency must give each eligible employee information about the RPL, including appeal rights."

Employee appeal rights are established by 5 C.F.R. § 330.209, which provides:

> An individual who believes that his or her reemployment priority rights under this subpart have been violated because of the employment of another person who otherwise could not have been appointed properly may appeal to the Merit Systems Protection Board under the provisions of the Board's regulations.

II.

Turning to the facts of this case, Mr. Roberto worked at the Navy Public Works Center ("PWC") in Guam between 1985 and April of 2000. Initial Decision, slip op. at 10, 17. As of 2000, Mr. Roberto held the position of Air Conditioning Equipment Mechanic. Id., slip op. at 10. On April 7, 2001, he was separated from his position due to an RIF in Guam. Id., slip op. at 17. At the time of the RIF, DOD operated both an

RPL and a PPP.  See id., slip op. at 12.  It is undisputed that the PPP was not OPM-approved.[2]

The PWC began issuing notices and holding briefings concerning the impending RIF in August of 1999.  Id., slip op. at 10.  Specifically, Joni Santos-Borja, the Supervisory Human Resources Staff Specialist and PPP Program Manager for the Guam Human Resources Office ("HRO-Guam") conducted three RIF briefings between August and October of 1999.  Id.  Ms. Santos-Borja's briefings focused on explaining RIF rules and forthcoming RIF notices.  Id., slip op. at 11.  "Very minimal" references were made to the agency's RPL, which was described as optional.  Id.  Appeal rights were also mentioned, but only very generally.  Id.  On November 23, 1999, Mr. Roberto was issued a CES.  The CES contained a list of reemployment programs, including the RPL and the PPP, with brief descriptions of each.  Id., slip op. 11-12.  Mr. Roberto was issued a "RIF Notice of Separation" on December 7, 1999.  Along with the Notice of Separation, he received the "Department of Defense Displaced Employee Guide."  Id., slip op. at 12.  The guide included a description of DOD's RPL.  Id.  It also included a description of the separate PPP maintained by DOD.  Id., slip op. at 12.  Among other things, the guide specified that an employee must apply for the RPL within thirty days of separation by an RIF.   The "Department of Defense Displaced Employee Guide" also described employees' appeal rights.  The guide stated, "If you believe that your reemployment priority rights under this program have been violated, you may appeal to the [Board] under the regulations provided . . . ."

---

[2]      The agency's RPL and PPP remain in effect today.  The PPP still has not been approved by OPM.

Mr. Roberto did not attend any of the three briefings conducted by Ms. Santos-Borja at HRO-Guam during August and October. Id., slip op. at 11. Nor did he read any of the information provided to him about the RPL. Id., slip op. at 12-13. However, he did attend "a couple" of briefings given by persons other than Ms. Santos-Borja. Id., slip op. at 11.

In late October of 1999, Mr. Roberto moved to Hawaii because his son required medical treatment there. Id., slip op. at 10-11. Due to his relocation, Mr. Roberto was granted leave from Guam without pay beginning in January of 2000. Id., slip op. at 11. While in Hawaii, Mr. Roberto met with Claire Hashimoto, Personnel Staffing and Classification Specialist at the Human Resource Service Center for the Pacific in Honolulu. Id., slip op. at 13. Ms. Hashimoto assisted Mr. Roberto in filling out his forms for registration on DOD's PPP. Id., slip op. at 14. However, she testified that she did not actually register Mr. Roberto for the PPP because that was the responsibility of HRO-Guam. Id. Rather, she stated, she merely aided Mr. Roberto in filling out his PPP registration forms as a courtesy to HRO-Guam. Id. Although Ms. Hashimoto typically mentioned the RPL to employees she registered on the PPP, she made no mention of the RPL to Mr. Roberto. Id., slip op. at 13-14.

Based on the forms he completed with Ms. Hashimoto's assistance, Mr. Roberto was successfully registered on the DOD PPP, as a result of which he received a temporary position as an Air Conditioning Equipment Mechanic at the Navy PWC in Pearl Harbor. Id., slip op. at 15. While working at his temporary position, Mr. Roberto also applied for a permanent position as an Air Conditioning Equipment Mechanic through the PPP. Id. HRO-Guam denied Mr. Roberto's application for the permanent

position because it determined that he was unqualified.  Id.  One of Mr. Roberto's co-workers at the Navy PWC in Pearl Harbor was hired instead for the permanent position. Id.

Mr. Roberto was separated by the RIF effective April 7, 2001.  Id., slip op. at 17.

### III.

Mr. Roberto appealed to the Board on April 26, 2001.  In his appeal, he claimed that his re-employment priority rights under 5 C.F.R. § 330.201 were violated because the Navy hired a person for the permanent Air Conditioning Equipment Mechanic position who otherwise would not have been hired had Mr. Roberto been properly considered for the position.

As noted above, following a hearing, the AJ dismissed the appeal for lack of jurisdiction.  Initial Decision, slip op. at 1.  The AJ did so on the ground that the Board only has jurisdiction over a reemployment priority rights claim under 5 C.F.R. § 330.209 if the appellant was registered under an agency RPL or an OPM-approved PPP.  As seen, Mr. Roberto was not registered on the DOD RPL.  Rather, he was registered on the DOD PPP, which was not approved by OPM.  Id., slip op. at 25.

The AJ rendered his ruling in Mr. Roberto's appeal against a backdrop of conflicting jurisprudence.  In Stuck v. Department of the Navy, 72 M.S.P.R. 153 (1996), the Board considered an appeal by an individual who was enrolled in both the DOD RPL and PPP and who claimed violations of her rights under both programs.  Id. at 155-56.  In Stuck, the Board held that it had jurisdiction to enforce the employee's claims under the PPP.  Id. at 155-57.  Following Stuck, the Board was faced with Sturdy v. Department of the Army, another case involving reemployment priority rights.  James

Sturdy worked as a Resource Management Specialist for the Department of the Army at Fort Chaffee, Arkansas. After he received notice that he was to be RIFed, he registered for DOD's PPP, the same priority placement program that is at issue in this case. He did not apply for the DOD RPL. After being registered on the PPP, Mr. Sturdy applied for one of three open Environmentalist positions at Fort Chaffee. After the Army found that he was not "well qualified" for the position, it declined to hire him. Mr. Sturdy was never separated by the RIF. Eventually, he accepted an offer of reassignment through the PPP to the position of Conservation Specialist at Fort Worth, Texas, with no reduction in grade or pay.

Even though he had not been RIFed, Mr. Sturdy lodged an appeal with the Board, claiming that the Army had violated his reemployment priority rights when it did not select him for one of the three Environmentalist positions at Fort Chaffee. In an initial decision, the AJ to whom the case was assigned dismissed the appeal for lack of jurisdiction because Mr. Sturdy had not registered for the DOD RPL. Sturdy v. Dep't of the Army, No. DA-0330-98-0028-I-1, slip op. (M.S.P.B. Jan. 15, 1998). On petition for review, the Board affirmed the AJ's dismissal of the appeal, but on another ground. Sturdy v. Dep't of the Army, 80 M.S.P.R. 273 ("Sturdy I"). Citing Stuck, the Board stated: "[A]n agency may maintain both an RPL and a PPP, and the Board has held that, pursuant to [5 C.F.R. §] 330.209, it has jurisdiction to review an alleged violation of reemployment priority rights under a PPP." Id. at 276. The Board thus agreed with Mr. Sturdy that his failure to register for the RPL did not "necessarily deprive the Board of jurisdiction over [his] appeal." Id. Nevertheless, the Board affirmed the administrative judge's dismissal of Mr. Sturdy's appeal for lack of jurisdiction on the ground that an

employee could only appeal an alleged violation of reemployment priority rights if the employee was separated from his or her position by an RIF, which was not the case with Mr. Sturdy. Id.

The Board's decision in Sturdy I was appealed to this court. While the appeal was pending, however, the government moved for a remand to the Board so that the Board could address the extent to which changes in 5 C.F.R. § 330.203(a)(3) affected the Board's jurisdiction over an employee who, like Mr. Sturdy, was notified of an impending RIF but was never actually separated from his position. See Eligibility Due to Reduction in Force, 57 Fed. Reg. 21,890 (May 26, 1992). The government's remand request was granted. Sturdy v. Dep't of the Army, 230 F.3d 1372 (Fed. Cir. 1999) (table).

On remand, the Board deferred to the view of OPM that actual separation by an RIF was not a necessary predicate for Board jurisdiction over an appeal under 5 C.F.R. § 330.209. Sturdy v. Dep't of the Army, 88 M.S.P.R. 502, 510 (2001) ("Sturdy II"). The Board then ruled that it had jurisdiction in the case even though Mr. Sturdy had not registered for the RPL because it determined that the Army had misinformed Mr. Sturdy about the RPL and that the misinformation had caused him not to register. Id. at 511-12. Based upon its ruling, the Board remanded the case to the AJ for adjudication of the merits of Mr. Sturdy's reemployment priority rights claim.[3]

---

[3] On remand the AJ affirmed the agency's finding that Mr. Sturdy was not "well qualified" for one of the three Environmentalist positions. Sturdy v. Dep't of the Army, No. DA-0330-98-0028-B-1 (M.S.P.B. Feb. 7, 2002). Mr. Sturdy then petitioned the Board for review.

The AJ's initial decision became the Board's final decision when the two sitting Members of the Board failed to agree on the disposition of Mr. Sturdy's petition. Sturdy v. Dep't of the Army, 97 M.S.P.R. 146 (2004) ("Sturdy III"). Both Members wrote

We now return to the AJ's decision in this case. Noting the Board's decisions in Stuck and Sturdy, as well as in two subsequent cases, Russo v. Department of the Navy, 85 M.S.P.R. 12 (1999), and Hudson v. Department of the Navy, 86 M.S.P.R. 398 (2000), the AJ stated that the Board's statements that it had jurisdiction over a claim under an internal PPP had occurred "in the factual context of cases where either the appellant had been on the RPL (which is the Board's basis for jurisdiction and the entrée to enforcement of the PPP) or where the appellant ha[d] claimed that the agency improperly prevented or interfered with registration for the RPL." Initial Decision, slip op. at 9-10. The AJ added that it was unclear to him "under what basis the Board may take jurisdiction over an agency's internal PPP. It appears the basis may be the 'in-lieu-of' provision of § 330.201(c), or a fact determination that the PPP has 'in effect' replaced the RPL, or both." Id. slip op. at 10.

Turning to the jurisdictional issues in the case before him, the AJ rejected Mr. Roberto's argument that the DOD PPP was operated "in lieu of" an RPL, thus giving the Board jurisdiction based on Stuck and 5 C.F.R. § 330.201(c). Id., slip op. at 23. According to the AJ, the most important evidence demonstrating the inapplicability of section 330.201(c) was the fact that DOD "neither sought nor obtained OPM

_____

(Cont'd….)
separately in Sturdy III. Chairman McPhie was of the view that the Board had jurisdiction over Mr. Sturdy's appeal even though Mr. Sturdy did not register on the RPL or an OPM-approved PPP. Id. at 152. Chairman McPhie reasoned that the Board had jurisdiction over Mr. Sturdy's appeal because Mr. Sturdy's failure to register for the RPL was due to agency misinformation. Id. at 153. Chairman McPhie would have affirmed the remand decision on the merits. Id. Member Marshall, however, took the position that jurisdiction did not lie over Mr. Sturdy's appeal because Mr. Sturdy was never actually separated from his position by an RIF. Id. at 154. Member Marshall thus disagreed with Sturdy II. In Sturdy v. Department of the Army, 05-3045, a decision issued today, we sustain the Board's exercise of jurisdiction. However, on the merits we vacate and remand.

concurrence" for its PPP. Id. The AJ concluded that the DOD PPP involved in Mr. Roberto's appeal was not "in lieu of" of an RPL because "the DOD PPP is a concurrent, stand-alone, 'in addition-to' program." Id.

The AJ also rejected Mr. Roberto's argument that jurisdiction existed because the DOD PPP had "in effect" replaced the RPL. Although the AJ found the evidence "indicates clearly that the PPP has 'in effect' replaced the RPL, as a practical matter," he concluded that "it is unclear how this development gives the Board jurisdiction under Part 330." Id., slip op. at 24-25. The AJ stated that he was unaware of any "in effect" theory of Board jurisdiction. Id., slip op. at 25.

As far as the DOD RPL was concerned, the AJ noted that Mr. Roberto had failed to establish that he applied for the RPL or was registered on it. Id., slip op. at 18-20. At the same time, the AJ ruled that the Board's holding in Sturdy II did not provide a basis for jurisdiction because Mr. Roberto had not shown that the Navy had interfered with Mr. Roberto's right to register for the RPL. Id., slip op. at 20. As seen above, 5 C.F.R. § 330.203(b) requires that an agency provide employees with information about the RPL, including appeal rights, at the time the employee receives an RIF notice of separation or a CES. Id. Considering together the "very minimal" references to the RPL in Ms. Santos-Borja's briefings, the description of the RPL on Mr. Roberto's CES, and the summary in the "Department of Defense Displaced Employee Guide," the AJ concluded that the Navy had provided Mr. Roberto with sufficient information to apprise him of the RPL and his appeal rights under section 330.203(b).

Mr. Roberto petitioned the Board for review of the initial decision. In an order issued September 23, 2004, the two sitting Members of the Board failed to agree on the

disposition of the petition. <u>Final Decision</u>, 97 M.S.P.R. 156.[4] Under 5 C.F.R. § 1200.3(b) the initial decision therefore became the final decision of the Board.

Mr. Roberto timely appealed the final decision of the Board to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(9) (2000).

DISCUSSION

I.

We will overturn a Board decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). We review the Board's findings regarding questions of law, including jurisdiction, without deference. <u>Carley v. Dep't of the Army</u>, 413 F.3d 1354, 1356 (Fed. Cir. 2005) (citing <u>Diefenderfer v. Merit Sys. Prot. Bd.</u>, 194 F.3d 1275, 1277 (Fed. Cir. 1999)).

II.

As seen, the AJ determined that the Board lacked jurisdiction because Mr. Roberto failed to register for the RPL and because the DOD PPP, for which he did register, was not approved by OPM. <u>Initial Decision</u>, slip op. at 23-24. On appeal, Mr. Roberto acknowledges that he did not register for the RPL within thirty days after the RIF, as required by 5 C.F.R. § 330.202(a)(1). He contends, however, that <u>Stuck</u> and its

---

[4] The two sitting Members of the Board agreed that the Board lacked jurisdiction over Mr. Roberto's appeal, but wrote separately to express their different rationales. In Chairman McPhie's view, the Board lacked jurisdiction over Mr. Roberto's appeal because Mr. Roberto's failure to register on an RPL or an OPM-approved PPP was not due to agency misinformation. <u>Final Decision</u>, 97 M.S.P.R. at 157. Member Marshall wrote that agency misinformation is irrelevant to the jurisdictional inquiry. <u>Id.</u> She based her conclusion that the Board lacked jurisdiction solely on the fact that Mr. Roberto was not registered on an RPL or an OPM-approved PPP. <u>Id.</u>

progeny establish that the Board had jurisdiction over the DOD PPP because it was operated "in lieu of" an RPL under 5 C.F.R. § 330.201(c). Mr. Roberto also argues that the Navy "in effect" replaced the RPL with the PPP, so that his failure to register for the RPL did not result in the Board lacking jurisdiction over his appeal. In any event, he argues, he was not told that he needed to register for the RPL in order to secure his reemployment rights and that, under these circumstances and the reasoning of Chairman McPhie in Sturdy III, 97 M.S.P.R. at 152, the Board has jurisdiction because the Navy failed to inform him about the RPL and his appeal rights, in violation of 5 C.F.R. § 330.203(b).

The government argues that because Mr. Roberto did not register for the RPL and the DOD PPP was not OPM-approved, the Board did not have jurisdiction over his appeal. The government discounts Mr. Roberto's contention that the Board had jurisdiction because the PPP "in effect" replaced the RPL by arguing that the applicable regulations provide no basis for jurisdiction in a situation where there has been an "in effect" replacement. With regard to Mr. Roberto's contentions that the Board had jurisdiction under section 330.203(b) as a result of the insufficiency of the information provided to him about the RPL, the government argues that the AJ's decision finding that the information was sufficient should be affirmed because it is supported by substantial evidence.

III.

It is well settled that the Board's jurisdiction is strictly limited to "any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a) (2000); Carley, 413 F.3d at 1356; Cowan v. United States, 710 F.2d 803, 805 (Fed. Cir.

1983) ("The board has no plenary jurisdiction; rather, its jurisdiction is limited to those areas specifically granted by statute or regulation."). The provision that gives the Board jurisdiction over reemployment priority rights claims is 5 C.F.R. § 330.209.

The rules of statutory construction apply when interpreting an agency regulation. Wronke v. Marsh, 787 F.2d 1569, 1574 (Fed. Cir. 1986) (citing Gen. Elec. Co. v. United States, 610 F.2d 730, 734 (Ct. Cl. 1979)). When construing a regulation or statute, it is appropriate first to examine the regulatory language itself to determine its plain meaning. Meeks v. West, 216 F.3d 1363, 1366 (Fed. Cir. 2000). We may also consider the language of related regulations. See Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1577-78 (Fed. Cir. 1995) (en banc). If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning. Meeks, 216 F.3d at 1366. However, if the regulation is silent or ambiguous, the court then gives deference to the agency's own interpretations. Id. (citing NationsBank v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256 (1995)).

As noted above, section 330.209 states, in relevant part, that an appeal may be taken to the Board by "[a]n individual who believes that his or her reemployment priority rights under this subpart have been violated . . . ." "[T]his subpart" refers to Subpart B of 5 C.F.R. Pt. 330. Subpart B is titled "Reemployment Priority List (RPL)." It contains section 330.201, which, as already seen, requires that an agency maintain either an RPL or an OPM-approved PPP to provide reemployment priority rights. See 5 C.F.R. § 330.201(a) (stating that an RPL is the mechanism agencies use in order "to give priority reemployment consideration to their former employees separated by reduction in force"); id. § 330.201(c) (stating that an OPM-approved program adopted under

subsection (c) must "satisfy legal entitlements to priority consideration in reemployment"). In short, reemployment priority rights under Subpart B are defined by either an RPL or an OPM-approved PPP. From that, we think it logically flows that when section 330.209, the jurisdictional regulation, refers to "reemployment priority rights under this subpart," it is referring to rights conferred by either an RPL or an OPM-approved PPP. It is not referring to rights conferred by a PPP that have not been approved by OPM. Accordingly, we hold that unless a PPP receives OPM concurrence, jurisdiction over appeals of alleged violations of PPP rights does not lie with the Board. Because the plain meaning of the regulation is clear, no further inquiry is required into agency interpretations or the regulatory history to determine its meaning. See Meeks, 216 F.3d at 1366.

An agency may establish a PPP in addition to its RPL without seeking OPM concurrence. An employee faced with an impending RIF may register on both the RPL and the PPP. When an employee has such dual-enrollment, as was the case in Stuck, the Board has jurisdiction to hear appeals of adverse decisions concerning the RPL under section 330.209, ensuring that the employee's rights under sections 330.201-330.209, including the right to appeal, are preserved. Thus, it is appropriate to interpret section 330.201(c) in accordance with its plain language so as to give the Board jurisdiction over PPPs only when they have obtained OPM concurrence.

The parties are in agreement that 5 C.F.R. § 330.201(c), when properly construed, requires "OPM concurrence" in order to bring appeals pursuant to an agency PPP under the jurisdiction of the Board. They dispute, however, the meaning of the term "OPM concurrence," as used in section 330.201(c). At oral argument, counsel for

Mr. Roberto contended that OPM concurrence exists when a program is implemented by an agency and allowed to exist without OPM objection. On this basis, he urges that the DOD PPP in this case was OPM-approved. We do not agree.

We think that "OPM concurrence" under section 330.201(c) means that OPM has expressly given documented approval for an agency PPP. Section 330.201(c) states that an agency must "obtain[] OPM concurrence" when replacing its PPP with an RPL. 5 C.F.R. § 330.201(c). In our view, the act of "obtaining" concurrence requires more than waiting for tacit consent from OPM. When subsection (c) was added to section 330.201 in 1988, OPM expressly noted that the new provision "would permit an agency to operate an alternative placement program as an exception to the RPL requirement. In the final regulation, we have clarified that OPM prior approval is necessary for such an exception." Recruitment, Selection, and Placement (General); Reduction in Force, 53 Fed. Reg. 45,065, 45,065 (Nov. 8, 1988) (emphasis added). To us, this statement compels the conclusion that "OPM concurrence" means express approval rather than some kind of tacit assent, as suggested by counsel for Mr. Roberto. Therefore, an agency PPP only falls under the scope of section 330.201(c) when OPM has expressly approved the PPP.

As noted, Mr. Roberto also argues that the Board has jurisdiction over his appeal because the DOD PPP was operated "in lieu of" an RPL under 5 C.F.R. § 330.201(c). According to Mr. Roberto, the Navy "in effect" replaced the DOD RPL with the PPP, so that his failure to register for the RPL did not result in the Board lacking jurisdiction over his appeal. We are not persuaded by Mr. Roberto's arguments. First, there is simply no factual basis for the assertion that DOD's PPP was operated in lieu of its RPL. It is

clear that DOD has an RPL and that, in addition, it operates a separate PPP. Turning to Mr. Roberto's second argument, it is true that the AJ found—and the government does not dispute the finding—that, "as a practical matter," the Navy "in effect" replaced DOD's RPL with the PPP. Initial Decision, slip op. at 24-25. The AJ concluded, however, that this finding did not lead to the conclusion that the Board had jurisdiction in this case. Id., slip op. at 25. We agree.

Merely replacing a RPL with a PPP "in effect" does not provide a basis for jurisdiction before the Board. The Board's jurisdiction is strictly limited to areas that are governed by statute or regulation. See Carley, 413 F.3d at 1356. By its plain language, § 330.201(c) only encompasses situations where an agency discontinues its RPL and replaces it with an OPM-approved PPP. Nothing in sections 330.201-330.209 governs an agency PPP that "in effect" replaces a RPL when the RPL has not in fact been discontinued. Mr. Roberto argues that the Board's decision in Stuck provides grounds for jurisdiction based on an "in effect" replacement of the RPL. The Board in Stuck noted that the employee in that case

> has shown that to deny her review of her claims under the PPP in effect denies her review by the Board of her claims under 5 C.F.R. § 330.209. In this regard, the Board has found that it will enforce an agency's own policy even if that policy or regulation grants the employee greater rights than she would have had under the general regulations.

Stuck, 72 M.S.P.R. at 157. If this language from Stuck is read to give the Board jurisdiction over an agency PPP that "in effect" replaces an RPL even though there is no law, rule or regulation governing such an "in effect" replacement of the RPL, it would greatly expand the Board's jurisdiction in contravention of well settled law requiring a rule, regulation or statute for Board jurisdiction. See 5 U.S.C. § 7701(a) (2000); Carley,

413 F.3d at 1356. We do not read Stuck to broadly expand the Board's jurisdiction. Because the employee in Stuck was registered on both the RPL and the PPP, Stuck, 72 M.S.P.R. at 155, the Board had jurisdiction based on the employee's registration on the RPL. Stuck does not expand the jurisdiction of the Board to encompass the "in effect" replacement of a RPL by a PPP.

IV.

Mr. Roberto also argues that, in any event, the Board had jurisdiction over his appeal because the Navy failed to advise him of his rights under the DOD RPL. In making this argument he points to the regulation at 5 C.F.R. § 330.203(b). As seen above, section 330.203(b) provides that "[a]t the time it gives a specific RIF notice of separation or a Certification of Expected Separation, the agency must give each eligible employee information about the RPL, including appeal rights."

We have not addressed whether a violation of section 330.203(b) would give the Board jurisdiction. We have, however, addressed the government's obligations under similar statutes and regulations. Brush v. Office of Personnel Management, 982 F.2d 1554 (Fed. Cir. 1992), involved similar provisions of the Civil Service Retirement Act of 1930, which require that the government inform annuitants of their rights under 5 U.S.C. §§ 8339(j) and (k)(2). Id. at 1559 (citing Pub. L. No. 95-317, 92 Stat. 382 (1978), as amended by, Reorganization Plan No. 2 of 1978, § 102, 92 Stat. 3783 (1978) (codified at 5 U.S.C. § 8339 note (1988))) ("The Director of the Office of Personnel Management shall, on an annual basis, inform each annuitant of such annuitant's rights of election under sections 8339(j) and 8339(k)(2) of title 5, United States Code."). In Brush, the government had failed to comply with the notice requirement of section 8339. Id. at

1560. We held that a spousal annuity was not precluded by the failure of the annuitant to make a timely election because of the government's violation of its duty to inform the annuitant. Id. Similarly, in Johnston v. Office of Personnel Management, 413 F.3d 1339 (Fed. Cir. 2005), a statute and related regulations required that the agency provide employees with notice of separation from employment and the employee's eligibility for disability retirement. Id. at 1341. We held that an employee who did not receive notice as required by the statute and regulations was not barred from receiving disability retirement benefits even though the employee had applied after the filing deadline. Id. at 1343. We think that in view of the similarity of the mandate to provide information in section 330.203(b) and the notice provisions before the court in Brush and Johnston, it follows that when an agency fails to provide information about its RPL to an eligible employee as required by section 330.203(b), the employee should not be barred from enjoying the benefits of registration on the RPL including the right to appeal to the Board, even if the employee failed to apply for the RPL within the thirty-day time limit set forth in section 330.202(a)(1).

The Board addressed the exact issue before us in Sturdy II. In Sturdy II, the Board held that it had jurisdiction pursuant to 5 C.F.R. §§ 330.203(b) and 330.209 because the Army provided insufficient information about RPL registration to an eligible employee, thereby denying him his appeal rights. 88 M.S.P.R. at 512; see also Sturdy III, 97 M.S.P.R. at 152 (separate opinion of Chairman McPhie) (noting that the Board has jurisdiction when, in violation of section 330.209, an agency fails to provide adequate information about its RPL).

Based on the foregoing, we hold that an agency's failure to correctly inform an eligible employee of his or her RPL rights in a timely fashion, as required by section 330.203(b), constitutes a violation of the employee's reemployment priority rights. Such a violation of reemployment priority rights is appealable to the Board under 5 C.F.R. § 330.209.[5]

Although a violation of 5 C.F.R. § 330.203(b) would give the Board jurisdiction under 5 C.F.R. § 330.209, Mr. Roberto has not demonstrated such a violation. Section 330.203(b) requires that an agency provide eligible employees with information about the RPL, including appeal rights. The AJ found that the Navy provided Mr. Roberto with sufficient information about the RPL to comply with the regulation. Initial Decision, slip op. at 20. This factual finding of the Board will only be overturned if it is not supported by substantial evidence. 5 U.S.C. § 7703 (2000); Bolton v. Merit Sys. Prot. Bd., 154 F.3d 1313, 1316 (Fed. Cir. 1998).

In finding that the Navy provided Mr. Roberto with information about the RPL as required by section 330.203(b), the AJ noted that the Navy held several briefings in which references to the RPL were made. The AJ also noted that there was a description of the RPL on Mr. Roberto's CES and that the Navy provided Mr. Roberto with the "Department of Defense Displaced Employee Guide" when he received his "RIF

---

[5] Indeed, the government does not challenge the proposition that a violation of section 330.203(b) would confer jurisdiction on the Board. At oral argument, counsel for the Navy was asked to comment on the following: "In [the Sturdy III] case, [Chairman McPhie] expressed the view that there can also be jurisdiction if, in fact, the agency fails to inform its employees about the available programs or misinforms the [employees]." Counsel for the Navy replied, "Our view is that would be sort of a constructive denial of RPL rights and that would give the MSPB jurisdiction over the allegations of constructive denial of RPL rights, but not jurisdiction over allegations of violations of the PPP."

Notice of Separation." Initial Decision, slip op. at 19. The "Department of Defense Displaced Employee Guide" contained a description of the RPL and Mr. Roberto's right to appeal to the Board. Id. Mr. Roberto disputes neither that the Navy held briefings wherein the RPL was mentioned nor that the Navy sent him at least these two documents containing descriptions of the RPL. Instead, Mr. Roberto claims that some of the documents provided to him by the Navy described the PPP without mentioning the RPL and that Ms. Hashimoto did not disclose to him the importance of registering for the RPL when she assisted him with his PPP forms. The Navy's failure to mention the RPL at every opportunity does not undermine the fact that the Navy did provide Mr. Roberto with information about the RPL at several briefings, with his CES, and with his "RIF Notice of Separation." We hold that these briefings and documents provide substantial evidence supporting the AJ's conclusion that the Navy fulfilled its obligation under section 330.203(b) to inform Mr. Roberto about the RPL and his appeal rights.

## CONCLUSION

For the foregoing reasons, the decision of the Board dismissing Mr. Roberto's appeal for lack of jurisdiction is affirmed.

## COSTS

Each party shall bear its own costs.

## AFFIRMED