NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-7052

JAMES M. HALL,

Claimant-Appellant,

v.

GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs,

Respondent-Appellee.

Virginia A. Girard-Brady, ABS Legal Advocates, P.A., of Lawrence, Kansas, for claimant-appellant. Of counsel was Heather Cessna.

Douglas K. Mickle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were Peter D. Keisler, Acting Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director. Of counsel was Kent G. Huntington. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and Martin J. Sendek, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge John J. Farley, III (Retired)

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-7052

JAMES M. HALL,

Claimant-Appellant,

v.

GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED: October 4, 2007

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE and GAJARSA, <u>Circuit Judges</u>.

PER CURIAM.

James M. Hall ("Hall") appeals the determination of the Court of Appeals for Veterans Claims' ("Veterans Court's") determination that his left ear otitis media, while service connected, was not compensable. Because we agree with the Veterans Court's interpretation of the term "hearing aid" as used in the regulation at issue, we <u>affirm</u>.

## I.    BACKGROUND

James M. Hall served in active duty in the U.S. Navy from 1974 to 1978. He has been diagnosed with left ear otitis media ("ear condition"). As treatment for his ear condition, he had a permanent tube placed in his left ear sometime around 1995.

In September 1998, Hall filed a claim for service connection for his ear condition. Although his claim was originally denied, it was re-adjudicated following enactment of the Veterans Claims Assistance Act. In 2003, the Regional Office ("RO") granted service connection for Hall's ear condition. The RO, however, assigned Hall's condition with a noncompensable evaluation because Hall had not shown compensable hearing loss.

Hall appealed the RO's decision to the Board of Veterans' Appeals ("Board"). The Board evaluated hearing tests as well as lay evidence and denied an initial compensable level for Hall's ear condition. Although the Board recognized that Hall had argued that some of the hearing tests were inadequate because they were performed with his ear tube in place, the Board did not address the issue.

Hall then appealed to the Veterans Court, arguing that his case should be remanded to the Board because it failed to address his contention that his hearing exams were improperly conducted with his ear tube in place. The Veterans Court rejected Hall's argument, and this timely appeal followed.

## II.    DISCUSSION

We review the Veterans Court's interpretation of regulations de novo. Smith v. Nicholson, 451 F.3d 1344, 1347 (Fed. Cir. 2006). Hall argues that the Veterans Court did not properly construe the term "hearing aids" in 38 C.F.R. § 4.85(a), which states in relevant part that: "Examinations will be conducted without the use of hearing aids." The Veterans Court did not explicitly construe this term. Rather, it stated that the regulation does not prohibit examinations with an ear tube in place and that Hall had not presented sufficient evidence to liken the effect of his ear tube to a hearing aid. Thus, it

appears that the Veterans Court construed the term as "a hearing aid or a device that has the same effect as a hearing aid." In the present appeal, Hall does not contest the Veterans Court's determination that the regulation does not explicitly preclude hearing examinations with ear tubes in place. Rather, he contends that ear tubes fall within his proffered interpretation of "hearing aid": "any device that would assist an individual's hearing."

The regulations do not provide a definition for the term "hearing aid," so we begin by determining whether the term has a plain and ordinary meaning. See Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002); see also Tesoro Haw. Corp. v. United States, 405 F.3d 1339, 1346 (Fed. Cir. 2005) ("We construe a regulation in the same manner as we construe a statute, by ascertaining its plain meaning."). A review of both general purpose and medical dictionaries makes clear that the term "hearing aid" has a plain and ordinary meaning: "a device that amplifies sound to aid in hearing." See Dorland's Illustrated Med. Dictionary 41 (30th ed. 2003) ("a device that amplifies sound to help deaf persons hear, often referring specifically to devices worn on the body"); Websters Third New Int'l Dictionary 1044 (1993) ("a device that amplifies the sound reaching an auditor's receptor organs").

When the plain meaning of the regulation is clear, we need not inquire into the regulatory history to determine its meaning. See, e.g., Roberto v. Dep't of Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006). We pause, however, to note that Hall's reliance on the regulatory history is without merit in any event. In promulgating revisions to the regulation at issue, the Department of Veterans Affairs ("VA") noted that a commenter was concerned that one table in the regulations was "based on the assumption of

hearing aids" and that performing hearing tests with the assistance of hearing aids violated "the policy of determining impairment of body function without the use of any prosthetic device." 64 Fed. Reg. 25202, 25204 (May 11, 1999). The VA stated that it was "unaware of any general policy which prohibits consideration of the effect of a prosthetic device in determining the degree of impairment" and noted that both corrected and uncorrected vision are evaluated under the rating schedule. Id. Hall argues that the mention of prosthetic devices in the regulatory history indicates that a "hearing aid" includes any prosthetic device for the ear. We disagree. The VA's statements relate to an alleged general policy against measuring impairment with prosthetic devices, one that the VA found did not exist. The VA's language suggests that hearing aids are prosthetic devices, but does not support the converse, i.e., that all prosthetic devices that affect hearing are "hearing aids." Those that do so without amplifying sound are not.

The meaning of the term "hearing aid" is unambiguous. We hold that the term means "a device that amplifies sound to aid in hearing." This interpretation appears to be consistent with that adopted by the Veterans Court.

### III.    CONCLUSION

We have considered the remainder of Hall's arguments and find them unpersuasive. For the reasons explained above, we affirm.