[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-12580

Non-Argument Calendar

_____

MANSUR AHMED,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A201-341-503

_____

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Mansur Ahmed petitions for review of a final order of the Board of Immigration Appeals affirming an immigration judge's denial of his application for asylum and withholding of removal under the Immigration and Nationality Act. The BIA held that the IJ did not err in denying Mr. Ahmed's asylum application based on an adverse credibility determination. After review of the parties' briefs and the record, we conclude that substantial evidence supports the IJ's conclusions and deny Mr. Ahmed's petition.[1]

I

A

Mr. Ahmed is a native and citizen of Bangladesh. He entered the United States without valid immigration documents on or about September 7, 2018. The Department of Homeland Security issued Mr. Ahmed a notice to appear, charging that he was removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled; and under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as

---

[1] Mr. Ahmed does not challenge the BIA's decision to affirm the IJ's ruling denying him relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. Thus, he has abandoned that claim. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

a foreign national not in possession of a valid entry document at the time of admission.

In March of 2019, Mr. Ahmed filed an application for asylum and withholding of removal under the INA based on his political opinion.  In his application, Mr. Ahmed asserted that he had been attacked and threatened by members of the Awami League, the current ruling party in Bangladesh, because he supported and worked for the Liberal Democratic Party (the "LDP").  He further stated that the police were unwilling and unable to protect him. Mr. Ahmed feared returning to Bangladesh because he would be targeted, threatened, attacked, tortured, and possibly murdered by members of the Awami League for his continued support of the LDP.[2]

Mr. Ahmed submitted several documents in support of his application.  These included a news article, an affidavit from his mother, letters from local political leaders, and medical records.

## B

The IJ held two evidentiary hearings on the merits of Mr. Ahmed's asylum petition.  Mr. Ahmed was the sole witness, and testified to the following.

In Bangladesh, he was a member of the LDP.  As a member, he participated in rallies, arranged meetings, and hung posters.

---

[2] Mr. Ahmed also sought withholding of removal under the CAT, but as noted, he does not challenge that portion of the IJ's ruling.

From June to July of 2017, he temporarily served as the vice-president for a committee within the LDP. He was attacked on at least three occasions by Awami League members.

The first incident took place on January 3, 2015. Forty members of the Awami League and twenty police officers approached him and other LDP members at a market and told them to stop protesting the Awami League. The Awami League members attacked and beat him and other LDP members with a boat paddle, a sharp weapon, and a hockey stick. Mr. Ahmed sustained injuries to his back and feet. Because of this attack, he was hospitalized for three days where doctors dressed his wounds with ointment and bandaged his feet and back.

The second incident occurred on June 10, 2017. Awami League members came to Mr. Ahmed's house and threatened him if he did not join the Awami League. They "touched [him] and . . . physically assaulted [him]." A.R. at 166. If he refused to join, they said they would kill him like they had killed his father.[3]

The third incident was in January of 2018. Five Awami League members confronted Mr. Ahmed and other LDP members as they were preparing for an LDP assembly and told them that they could not hold their meeting. When Mr. Ahmed was returning home after the meeting, he was attacked by ten Awami League members, some of whom were wielding a knife and a hockey stick.

---

[3] Mr. Ahmed's father, a former leader of the Bangladesh Nationalist Party, died in 2007 following an attack by members of the Awami League.

He sustained injuries to two of his fingers and both his legs.  Mr. Ahmed was hospitalized for 14 days, and his wounds were cleaned, bandaged, and otherwise treated.  After this attack, Mr. Ahmed stated that he hid at home while he recovered, until leaving Bangladesh in March of 2018.

On cross-examination, the government asked Mr. Ahmed about a news article he had submitted in support of his petition, which discussed the January of 2018 attack.  The article stated that Mr. Ahmed was a vice-president of the LDP.  He responded that he had been an interim vice-president following the dissolution of an LDP committee for a one-month period in 2017, but that he was not serving as vice-president at the time the article was written. The government also questioned Mr. Ahmed about a statement in the article that he was threatened over the phone while in the hospital following the attack.  He testified that the statement in the news article was incorrect because he had not been threatened over the phone.

The government further cross-examined Mr. Ahmed about why his medical records did not mention either injuries to his feet after the 2015 attack or stitches on his finger following the 2018 attack.  Mr. Ahmed responded that he did not know why the records did not include the injuries to his feet and that the stitches should have been included on his discharge letter.  The government also asked Mr. Ahmed why his prior written statement and his mother's affidavit did not state that he had been beaten during the 2017 incident.  Mr. Ahmed replied that he did not know why his mother had

not mentioned the attack, but that she was sick due to the various attacks on their home by the Awami League.  He did not explain why he had not previously mentioned the physical attack in 2017.

The IJ issued a written decision denying Mr. Ahmed's application for asylum and withholding of removal under the INA, finding that his testimony was "generally . . . inconsistent, implausible, and at times evasive."  A.R. at 116.  The IJ further found that "[Mr. Ahmed's] testimonial account either contradicted or was an embellishment of the narrative and basis for asylum set forth in the written narrative."  *Id.*  More particularly, the IJ found that, while the newspaper article Mr. Ahmed submitted indicated that he was a vice-president for the local LDP, his affidavit, his mother's affidavit, and the letter from the LDP official made no mention of Mr. Ahmed holding a position or office in the LDP.  Though Mr. Ahmed explained that he served as a vice-president for a one-month period in 2017, the IJ concluded that Mr. Ahmed's testimony failed to clarify his role in the LDP.  The IJ also found that Mr. Ahmed failed to provide rational explanations for the discrepancies in his medical records.  Finally, the IJ noted that Mr. Ahmed provided no evidence of broken bones, severe injuries, disability, or other forms of lasting physical or mental harm.  Based on that and the Department of State report on country conditions, the IJ concluded that Bangladesh did not have "so serious a problem to constitute a pattern or practice of 'persecution' that is systematic, pervasive, or organized."  *Id.* at 120.

The BIA dismissed Mr. Ahmed's appeal, adopting the IJ's findings and conclusions.  The order stated that "[t]he inconsistencies regarding [Mr. Ahmed's] role in the LDP, his injuries, and medical treatment, coupled with the [IJ's] demeanor observation, constitute significant evidence of a lack of credibility in [Mr. Ahmed's] asylum claim." *Id.* at 8 (internal quotation marks omitted).

Mr. Ahmed timely filed this petition.

## II

We review the decision of the BIA, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's opinion. *See Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). Here, the BIA did not make any independent findings or reach any independent conclusions.  It instead agreed with the IJ's findings, stating that his reasons were supported by the record. As such, we "review the IJ's decision as if it were the BIA's." *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230 (11th Cir. 2006).

We review credibility determinations under the substantial evidence test. *Id.* at 1230–31.  Under this deferential test, we affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (internal quotation marks omitted).  We will reverse the IJ's credibility findings "only if the evidence compels a reasonable fact finder to find otherwise." *Chen*, 463 F.3d at 1230–31 (internal quotation marks omitted).

A credibility determination may be based on the totality of the circumstances, including: (1) "the demeanor, candor, or responsiveness of the applicant;" (2) the plausibility of the applicant's account; (3) the consistency of the applicant's statements with other record evidence; and (4) "any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). When the IJ makes an adverse credibility finding, he must offer specific, cogent reasons for the finding. *See Chen*, 463 F.3d at 1231. The burden then shifts to the applicant to demonstrate that the decision was not supported by such specific, cogent reasons or substantial evidence. *See id.* A tenable explanation for any inconsistencies in the applicant's testimony, however, may still not compel reversal of the IJ's adverse credibility determination. *See id.* at 1233.

We have explained, based on the language of the statute, that the immateriality of the inconsistencies the IJ identifies in support of his adverse credibility determination does not compel reversal. *See, e.g., Chen*, 463 F.3d at 1233 (stating that based on the language of § 1158(b)(1)(B)(iii), it did not matter for purposes of reversal that the inconsistencies and discrepancies noted by the IJ were "trivial" and "irrelevant to the dispositive issues"). Nevertheless, the inconsistencies relied on by the IJ cannot be "wholly immaterial." *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1305 (11th Cir. 2009) (explaining that the "identified inconsistencies"—the

petitioner's interchanging of the words "car" and "truck"—"were not sufficient to support a finding of lack of credibility because they were not inconsistencies at all" but merely a "difference in terminology" and "wholly immaterial" to the asylum petition).

Here, the IJ's finding that Mr. Ahmed was not credible based on the inconsistencies between his testimony and the record evidence is supported by substantial evidence. The IJ identified several, specific inconsistencies within Mr. Ahmed's testimony and between his testimony and the record evidence. For example, the IJ detailed that Mr. Ahmed embellished his testimony by testifying to details that otherwise did not appear in any documentation submitted in support of his application. The IJ also noted specific inconsistencies concerning Mr. Ahmed's medical records and regarding his alleged role in the LDP. "[W]hile [Mr. Ahmed's] explanations of the [inconsistencies are] tenable, we cannot say, especially given the relative lack of corroborating evidence, that these explanations would compel a reasonable fact finder to reverse the IJ's credibility determination." *Id.*

Additionally, the IJ's identified inconsistencies are not wholly immaterial. *See Kueviakoe*, 567 F.3d at 1305. The discrepancies identified by the IJ were not a mere difference of word choice as in *Kueviakoe*, and Mr. Ahmed did not attempt to explain any of them as such. *See id.* Instead, Mr. Ahmed testified that he did not know why the medical records did not mention injuries to his feet or any stitches, that he did not know why the newspaper article referred to him as a vice-president, and that his mother's

affidavit was incomplete because she was sick.  These inconsistencies are not "wholly immaterial."

Our dissenting colleague states that the identified inconsistencies do not support an adverse credibility determination because they bolster Mr. Ahmed's credibility.  *See* Dissenting Op. at 9. Were we reviewing the credibility determination *de novo*, we may well agree.  The relevant statute is clear, however, that the adverse credibility determination may be based on several factors, including the "responsiveness of the applicant" and "the consistency of the applicant's statements with other record evidence." § 1158(b)(1)(B)(iii).  Given this statutory language, then, the inconsistences noted by the IJ are probative of Mr. Ahmed's credibility. Similarly, it does not matter that the inconsistencies may have been "diminshment[s]" or "bolster[ed]" his credibility, Dissenting Op. at 6, 9, because it is indisputable that they were inconsistences.  *See* § 1158(b)(1)(B)(iii).  Although the administrative record may support a different outcome, that is not the standard we are required to apply.  *See Adefemi*, 386 F.3d at 1027 ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.").

Because the IJ offered specific, cogent reasons to support his credibility determination, the burden shifted to Mr. Ahmed to demonstrate error.  In his petition, Mr. Ahmed argues that he explained the inconsistencies in the news article and the IJ's findings as to the medical records were incorrect.  This, however, is insufficient to disturb the adverse credibility finding.  We have previously

found substantial evidence to support an adverse credibility determination where the applicant's testimony "included at least one internal inconsistency" and "one omission," and the applicant did not provide corroborating evidence that would have rebutted these inconsistencies and omissions. *See Xia v. U.S. Att'y Gen.*, 608 F.3d 1233, 1240 (11th Cir. 2010). Other than his own testimony, which the IJ found not credible, Mr. Ahmed did not provide any evidence to corroborate his account in rebuttal to the identified inconsistencies. Indeed, his own testimony at times failed to explain discrepancies in his case. Thus, Mr. Ahmed failed to meet his burden.

### III

The IJ's credibility determination is supported by substantial evidence, and this record does not compel us to reverse. We therefore deny Mr. Ahmed's petition.

**PETITION DENIED.**

20-12580          ROSENBAUM, J., Dissenting                    1

ROSENBAUM, Circuit Judge, Dissenting:

The majority denies Mansur Ahmed's petition because it finds that the record does not compel reversal of the Immigration Judge's ("IJ") credibility finding. It arrives at this result by applying the deferential "substantial evidence" standard of review to the IJ's factual finding that Ahmed was not credible. While I understand the deference we must give to the IJ on these matters, I respectfully dissent because, in my view, the record as a whole demonstrates that there were not "specific, cogent reasons" for the adverse credibility determination. *Forgue v. U.S. Atty. Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). I would grant Ahmed's petition and remand accordingly.

We review factual findings, like the credibility determination here, under the substantial-evidence test. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1341, 1350 (11th Cir. 2006). Our review is deferential, requiring us to affirm the agency's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009) (quotation marks omitted). We have explained that findings of fact in this context may be reversed only if the record compels a different result. *Id.*

The IJ denied Ahmed's application after finding he was not credible because the IJ said Ahmed "testified in an inconsistent, implausible, and at times evasive manner," and his "testimonial account either contradicted or was an embellishment of the narrative and basis for asylum set forth in the written narrative he provided."

2                ROSENBAUM, J., Dissenting                20-12580

As support for these conclusions, the IJ cited some differences between Ahmed's testimony and the documentary evidence he provided.

The first set of supposed inconsistencies the IJ identified went to Ahmed's role in the LDP.  In his affidavit and testimony, Ahmed claimed he was a "general worker" and a "member" of the LDP, while a newspaper article he submitted referred to him as a "local leader" and the "vice president" of the "Chatkhil LDP upazila unit." When asked about this discrepancy on cross examination, Ahmed explained that he held the role as vice president for a particular committee on an interim basis from June 2017 to July 2017.

The second set of ostensible inconsistencies the IJ identified appears in Ahmed's testimony concerning the injuries he suffered during the attacks by his persecutors.  The IJ first noted that Ahmed testified his feet were treated for wounds he received in the 2015 attack.  But when asked about these wounds, Ahmed was unable to explain "why there was no injury to his feet noted on the medical letter."

Last, the IJ found an "inconsistency" between a letter Ahmed's mother wrote and a physician's letter dated January 30, 2018.[1]  Ahmed's mother's letter said that her son was "injured heavily" by Awami League supporters on January 30, 2018.  According

---

[1] Because there is no such letter dated January 30, 2018, I assume that the IJ was actually discussing a letter dated February 12, 2018, that contains this information.

20-12580　　　　　ROSENBAUM, J., Dissenting　　　　　3

to the IJ, the physician's letter contradicted Ahmed's mother's claim because it indicated that Ahmed was "'brought in for treatment' for cuts on his hands, legs, and shoulders, and for bruises and swelling," yet the only treatment reported during this "two-week admission" was cleaning of Ahmed's wounds and administering of pain medicine.

The Majority Opinion upholds the BIA's decision upholding the IJ's determination that Ahmed was not credible. It does so in large part because the relevant statute provides that "a trier of fact may base a credibility determination on … any inaccuracies or falsehoods in [an applicant's statements], without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *See* 8 U.S.C. § 1158(b)(1)(B)(iii).

To be sure, the statute gives the trier of fact wide latitude, but that latitude is not boundless. The statute also requires the trier of fact to consider the totality of the circumstances and relevant facts. Indeed, it provides, in pertinent part, as follows:

> **Considering the totality of the circumstances, and all relevant factors**, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not

4                   ROSENBAUM, J., Dissenting                   20-12580

under oath, and **considering the circum-stances under which the statements were made**), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added). And, after considering the totality of the circumstances, the IJ must support her adverse credibility determination with "specific, cogent reasons." *Forgue*, 401 F.3d at 1287. So, while "inaccuracies and falsehoods" don't have to be material to the basis for the application to support an adverse credibility determination, they still have to be considered in context and they still must make sense as reasons to disbelieve the applicant.

Taking each of the IJ's offered "inconsistencies" in turn reveals that, when considered within the totality of the circumstances, they cannot be used to provide the requisite specific, cogent reasons for an adverse credibility determination.

Before I explain why, I note that we must remember that Ahmed seeks asylum on the basis that he has been persecuted for

20-12580            Rosenbaum, J., Dissenting            5

his political opinion—that is, his support of the LDP.  On this record, regardless of anything else, it is clear that, among other things, Ahmed has been injured by the Awami League on two distinct occasions because of his support of the LDP.  And those two incidents have resulted in serious enough injuries that he has landed in the hospital for three days and fourteen days, respectively.

With that background in mind, I consider the first purported discrepancy between Ahmed's claim he was a "member" of the LDP and the newspaper article's report that he was a "vice president."  Even if we set aside the reality that newspaper articles are no more inherently reliable than an individual's unsworn testimony—and that, if anything, they may be less reliable because, by design, they rely on hearsay (and often double hearsay)—the IJ's reliance on the discrepancy here is not cogent.

The IJ did not address Ahmed's explanation in his decision, much less explain whether, or why, he found that Ahmed's explanation was "inconsistent, implausible, [or] evasive."  Nor did he explain how he could have found Ahmed's testimony on this point "contradicted or . . . an embellishment of the narrative and basis set forth in his written asylum application."

In the course of seeking asylum for persecution based on his political opinion, Ahmed testified that he was an active member of the LDP—a political party.  This testimony came after he had submitted an article that referred to him as the vice president of a unit within the LDP.  If Ahmed were going to lie about his role in the LDP, it would make no sense for Ahmed to do so by downplaying

6                    ROSENBAUM, J., Dissenting                    20-12580

it when the basis of his claim to relief is that he was attacked because of his political opinion. If anything, a leadership role would strengthen his claim. But rather than claiming to be a vice president because he served as the vice president of a committee on only an interim basis for only a month in 2017, Ahmed said that he was a member. A newspaper article said otherwise, and for this, in part at least, the IJ deemed Ahmed a liar. Embellishment—which is the word the IJ used to describe Ahmed's testimony—implies enhancement. But the "lie" the IJ attributed to Ahmed here would have been diminishment. It can hardly be considered "cogent" to say that Ahmed must have been lying when he *diminished* his chances at getting relief.

Next, I turn to the lack of reference to Ahmed's foot wounds in the medical letter. This medical letter refers to Ahmed's hospitalization in 2015 after he asserts he was attacked by the Awami League. I acknowledge that the medical letter does not include a reference to the wounds to Ahmed's feet. But that is meaningless when considered in light of what *was* in the medical letter. That is, it is meaningless when considered in context, or in the "totality of the circumstances." The letter explained, "The patient described that he [was] assaulted by opposite political party and get injury to head and back with bruising all over his body." Then, the letter said Ahmed's "shirt was torn in different areas and torn areas were blood-mixed...." The letter characterized the injuries as consisting of "complex" cuts with a "sharp knife" to his back and leg, as well as injuries from "blunt" weapons to his head, arms, face, neck, and

abdomen.  It also notes that Ahmed was treated in the "Surgery" Department.  And after a three-day stay in the hospital so the Surgery Department of the hospital could tend to his wounds, Ahmed was released with two different antibiotics and pain medications and instructed to "[s]tay 7 days in full bed rest."

The IJ said there was "no mention of suturing or bandaging that one would expect," and he further stated that any reference to medical treatment was "conspicuously absent."  But Ahmed can't control how the hospital provides its records.  And the IJ never explained why one might expect to see mention of suturing or bandaging when the records don't say anything at all about the treatment that Ahmed received.  Nor did the IJ explain why the absence of any reference to treatment was significant when the IJ didn't question the authenticity of the records.

When we consider the context, then, that the report does not specifically contain a reference to bandaging Ahmed's feet or suturing his wounds tells us nothing.  Again, the records indicate that Ahmed arrived at the hospital with injuries all over his body, stayed there three days, and was discharged with a host of prescriptions and instructions to spend seven days on full bed rest.  The letter states not one single word about treatment the hospital administered.  But based on the totality of the circumstances, it defies logic to suggest that the hospital would have noted all these injuries, kept Ahmed there for three days in the "Surgery" Department, but at no point bandaged or sutured the "complex" "sharp knife" wounds Ahmed was prescribed antibiotics for upon his discharge.

8                    ROSENBAUM, J., Dissenting                    20-12580

One wonders what goes on in this hospital's Surgery Department if not surgery.  In sum, given the totality of the circumstances, it isn't "cogent" to find that Ahmed is not credible based on the absence of a specific reference to Ahmed's foot wounds in the medical letter relating to Ahmed's 2015 hospitalization.

Last, I consider the purported discrepancy between Ahmed's mother's statement that Ahmed was "heavily" injured and the physician's letter pertaining to Ahmed's 2018 hospitalization, which Ahmed asserts occurred after he was attacked by the Awami League.  The letter from the physician consists of six short sentences in its entirety (and one says only "If you have any questions about this particular patient or require further information please feel free to contact me."), so it provides little detail.  But the information it does give actually corroborates Ahmed's mother's statement that Ahmed was seriously injured in the January confrontation with the Awami League.  The letter states that Ahmed was brought in on January 30, 2018, which is consistent with Ahmed's testimony that he went to the hospital after being attacked that day. It is also consistent with the reports that the Awami Party attacked members of the LDP that day.  In addition, the letter notes that Ahmed had cuts on his hands, legs, and shoulders, as well as bruises and swelling, all of which is consistent with his testimony that he was brutally attacked by a group of individuals that day, some of whom were armed with hockey sticks or knives.  Significantly, the letter also states that Ahmed spent two weeks in the hospital,

20-12580                    ROSENBAUM, J., Dissenting                    9

which is consistent with his testimony that he spent two weeks in a hospital.

Left with having to explain away how a two-week hospital stay did not provide corroboration of Ahmed's and his mother's statements, the IJ opined that the length of a hospital stay does not necessarily establish the severity of the patient's injuries. But even assuming that a hospital would keep a patient for two weeks because of cuts, bruises and swelling that weren't serious and didn't require medical attention for that whole period—a significant leap of faith—spending two weeks in a hospital certainly doesn't provide any basis for a trier of fact to conclude that an individual's injuries were not severe. Again, this supposed discrepancy really isn't a discrepancy when considered in the totality of the circumstances.

Ultimately, the IJ's stated reasons for finding Ahmed not to be credible are not cogent when viewed in light of the totality of the circumstances and the entire record. On the contrary, the documentary evidence the IJ relied on actually bolsters Ahmed's credibility on his claims that, because of his political beliefs, he was beaten and severely injured on multiple occasions. In short, when we look at the totality of the circumstances, there are no specific, cogent reasons to conclude that the supposed inconsistencies in the record support an adverse credibility determination. For these reasons, I respectfully dissent.