NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3395

EDDIE L. SPIGNER,

Petitioner,

v.

DEPARTMENT OF THE AIR FORCE,

Respondent.

———————————————

DECIDED:  August 3, 2005

———————————————

Before RADER, BRYSON, and LINN, Circuit Judges.

PER CURIAM.

Eddie L. Spigner ("Spigner") appeals the Merit Systems Protection Board's ("Board") order affirming the Department of the Air Force's ("Agency") decision to not select Spigner for the position of temporary Construction Inspector, applying 5 C.F.R. § 333.201(b)(1999), repealed by 69 Fed. Reg. 33,271, 33,272 (June 15, 2004).  Spigner v. Dep't of the Air Force, Nos. DE-3443-99-0252-M-1, DE-3443-99-0252-C-1 (MSPB June 22, 2004) ("Final Order").  Because the Board's decision was supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion or

obtained without procedures required by law, rule, or regulation having been followed, we affirm.

## I. BACKGROUND

Spigner is a veteran entitled to a 10-point veteran's preference. In February 1999, Warren Air Force Base ("Warren AFB") had an opening for the position of Construction Inspector, GS-809-7, temporary—not to exceed one year. Warren AFB contacted the Air Force Personnel Center at Randolph Air Force Base ("AFPC"), which maintains a database of resumes of external candidates. The AFPC referred to Warren AFB the names of four veterans, including Spigner, all of whom were identified as 5-point preference eligibles. Spigner was not identified as a 10-point veteran because the AFPC had not received the proper notification from the Department of Veterans Affairs.

Spigner filed a complaint with the U.S. Department of Labor's Veterans Employment and Training Service ("VETS"), which concluded that Spigner's rights had not been violated and that the Agency would not have been required to hire Spigner even if he were correctly identified as a 10-point preference eligible. Spigner appealed to the Board. Before the Administrative Judge ("AJ"), the parties stipulated (1) that the Agency should have considered Spigner to be a 10-point veteran when it filled the Construction Inspector position and (2) that Spigner met the minimum qualifications for that position. The AJ denied relief, reasoning that the Agency was permitted to pass over Spigner to choose a 5-point veteran. The Board reopened the case to modify the opinion, but affirmed the AJ's initial decision.

Spigner appealed to this court. We noted that VETS and the AJ analyzed the case under the wrong Office of Personnel Management ("OPM") regulation—

5 C.F.R. § 302.401—and that the Board tried to fix the error by applying and citing the correct regulation—5 C.F.R. § 333.201. Spigner v. Dep't of the Air Force, 25 Fed. Appx. 863, 864-65 (Fed. Cir. 2001) ("Spigner I"). However, we also recognized that the Board only assumed that it knew what the Agency would have done if it had known the correct facts and applied the correct law. Id. at 865. Accordingly, we vacated the Board's decision and remanded the case for the Agency's consideration. Id.

On remand from this court, the Board remanded the case to the AJ. Final Order at 3. On December 3, 2002, the AJ issued a decision remanding the matter to the Agency with instructions that the Agency consider Spigner for the position on the basis of his resume and without referring to the qualifications of other candidates. Id. The AJ thought that the Agency's interpretation of § 333.201(b) as requiring "first consideration" was reasonable, but that the record did not show that Spigner received that consideration before the other candidates were referred. Id. The AJ instructed that if the Agency determined that Spigner lacked the desired experience, the Agency should set forth with specificity what desired experience was lacking. Id. The AJ notified Spigner that the decision would become final on January 7, 2003, if he did not petition the Board before that date. Id. at 4.

On February 6, 2003, the Agency indicated that it had considered Spigner for the Construction Inspector position in accordance with the AJ's instructions, but found Spigner to lack the desired experience and did not select him. Id. The Agency noted that the purpose of the position was to provide inspection, contract escort, and security on construction projects at off-base intercontinental ballistic missile ("ICBM") facilities, and that the position required the ability to read and interpret blueprints, as well as

engineering and architectural plans and specifications. Id. The Agency explained that Spigner's resume indicated that he did not have the desired experience in power generation, distribution, lighting, diesel units, fuel distribution, sewage systems, and topography, or with blueprints and engineering and architectural plans and specifications. Id.

Spigner then filed with the Board a petition for review of the AJ's initial decision and, in the alternative, a petition for enforcement of that decision. Id. at 5. The AJ denied relief. Id. The Board overlooked issues concerning the timeliness of the petitions, considered the AJ's December 3, 2002 decision, and agreed that the Agency need not hire Spigner to comply with § 333.201(b)'s "first preference" requirement. Id. at 8. The Board reasoned that other sections of the regulation—§ 333.202 and § 333.203—supported this conclusion, that the regulatory history of § 333.201 showed that OPM considered § 333.201 as affording eligible veterans only as much preference as they would receive in competitive exams, and that its interpretation of § 333.201(b) did not render §§ 302.401-402 redundant. Id. at 8-10.

As to the petition for enforcement, the Board agreed that the Agency complied with the AJ's instructions. Id. at 10. The Board reasoned that (1) the Agency "considered the appellant without comparison or competition with others"; (2) the Agency "explained why the appellant lacked the desired experience"; (3) "the appellant did not contest [the Agency's] determination that he lacked the desired experience, and his resume did not list such experience"; (4) "the position description supported [the Agency's] determination that the experience that [the Agency] found lacking was important in performing the essential duties of the position"; and (5) "[the Agency] acted

consistently with [its] assertion that the desired experience was important by selecting an individual who had such experience." Id. The Board explained that there is a difference between a candidate having the minimum qualifications for a position and the candidate having the desired experience for that position, and that the Agency provided a detailed explanation of why Spigner's experience was lacking. Id. at 11. Spigner appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. ANALYSIS

### A. Standard of Review

We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); Gibson v. Dep't of Veterans Affairs, 160 F.3d 722, 725 (Fed. Cir. 1998).

### B. Discussion

Section 333.201(b) is titled "Making appointments from an unranked list," and provides that:

> In making temporary and term appointments from a list of eligible candidates who have not received numerical scores, an agency shall give preference to preference eligibles as follows:
> . . . .
> (b) For other positions, preference shall be given first to preference eligibles with compensable service connected disability of 10 percent or more, and second to other preference eligibles.

Thus, the regulation talks in terms of giving "preference" to preference eligibles and states that "preference eligibles with compensable service connected disability of 10 percent or more" must be given preference first. The regulation does not state that

10-point preference eligibles must be hired. Indeed, the surrounding sections in Part 333 explicitly contemplate that the Agency can pass over a first preference eligible as long as the Agency affords the candidate "prior consideration."

Section 333.203 is entitled "Passing over a preference eligible," and states that "[w]hen an agency making an appointment passes over the name of a preference eligible who is entitled to prior consideration under paragraph (b) of § 333.201 . . . and proposes to select a nonpreference eligible," the agency must, at the least, record its reasons for so doing and provide a copy of the reasons to the preference eligible upon request. See § 333.203(a), (b). Moreover, § 333.203(c) contemplates a preference eligible being passed over several times. If a preference eligible given prior consideration can be passed over in favor of a non-preference eligible, then logically a preference eligible given prior consideration can be passed over in favor of another preference eligible.

Spigner argues that consideration of other sections in Part 333 is legal error and that Spigner I admonished the Board not to look outside of § 333.201. However, our case law is clear that courts should interpret the regulation as a whole and thus consider sections linked to the section in question. See Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1577-78 (Fed. Cir. 1995) (en banc) (holding that the proper interpretation of the plain language of the regulation "examines and reconciles the text of the entire regulation, not simply isolated sentences"). Spigner I acknowledged that it was error for the Agency to rely on 5 C.F.R. § 302.401, but did not say that the Agency could not look to other sections of Part 333 and construe the regulation as a whole.

Spigner asserts that the text is clear that "preference" means "hiring." Spigner argues that use of the word "selection" in the title to Part 333 and use of the word "appointments" in § 333.201 indicate that the language "preference shall be given first to preference eligibles" requires "selection" or "appointment." However, Spigner takes "selection" and "appointment" out of context. Part 333 in general, and § 333.201(b) in particular, detail processes for making selections or appointments. The text does not equate being given a preference with being selected for the position.

Spigner argues that nowhere does the text of § 333.201(b) specify "first consideration." However, § 333.203 expressly refers to a "preference eligible who is entitled to prior consideration under paragraph (b) of § 333.201." Because § 333.201(b) states that "preference shall be given first to preference eligibles with compensable service-connected disability of 10 percent or more, and second to other preference eligibles," prior consideration is first consideration in this instance.

Spigner asserts that this court rejected the Board's interpretation of § 333.201(b) in Spigner I. Spigner points to language in Spigner I that referred to "priority consideration" as a term of art which was not found in this regulation. However, our reference to "priority consideration" was in response to the Board's citation to Langston v. Department of the Army, 84 M.S.P.R. 597, 601 (1999). Because that case dealt with the breach of a settlement agreement provision providing a party with "priority consideration" for available positions, see id., and thus did not lend direct support for the Board's interpretation of § 333.201(b), we were hesitant to affirm the Agency's interpretation on that rationale.

Spigner argues that the Agency's stipulation that he met the minimum qualifications for the job and its later determination that he lacked the desired experience are inconsistent. However, we see no inconsistency. Spigner may have been minimally qualified, but substantial evidence supports the Agency's determination that because the position was specialized, Spigner lacked the breath and depth of experience that the Agency desired the candidate to possess.

Spigner asserts that if the regulation were interpreted to give him only first consideration, then the benefit that the regulation confers on disabled veterans would be illusory. However, the regulatory history shows that OPM contemplated that the positions covered by Part 333 "often have specialized qualification requirements that should be recognized in the referral process." 52 Fed. Reg. 49,023, 49,023 (Dec. 29, 1987). Indeed, OPM struck a balance in promulgating Part 333. The regulation provides "eligible veterans as much preference as they would receive in competitive examinations" and "give[s] agencies greater flexibility in recognizing qualitative differences among candidates." Id.

The Board instructed the Agency to consider Spigner's resume before looking to any other candidates, make a decision on whether to offer Spigner the job, and if the Agency chose to pass-over Spigner, to provide Spigner with a detailed explanation of why it found Spigner's experience lacking. The Agency considered Spigner and provided that detailed explanation. Substantial evidence supported the Agency's rationale for passing over Spigner. As a result, we do not believe that the benefit to a 10-point preference eligible veteran like Spigner is illusory. Without the preference, Spigner may never have been considered for the position. Although the preference

may not result in hiring the preference eligible veteran in all instances, it is OPM's belief

that this method struck the balance that Congress intended.

## III.  CONCLUSION

For the foregoing reasons, the decision of the Board is affirmed.