# United States Court of Appeals for the Federal Circuit

---

**DEREK T. WILLIAMS,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**UNITED STATES POSTAL SERVICE,**
*Intervenor*

---

2017-1535

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-15-0530-M-1.

---------------------------------------------------------------------------

**HARRIS L. WINNS,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2017-1663

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-15-0165-M-1.

―――――――――――

Decided:  June 11, 2018

―――――――――――

PAUL MICHAEL SCHOENHARD, McDermott, Will & Emery LLP, Washington, DC, argued for petitioner in 2017-1535.  Also represented by REBECCA HARKER DUTTRY, NICOLE JANTZI, ELIZABETH LOUISE BURKE TETER.

HARRIS L. WINNS, San Jose, CA, pro se, in 2017-1663.

STEPHEN FUNG, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent in 2017-1535.  Also represented by BRYAN G. POLISUK, KATHERINE M. SMITH, JEFFREY A. GAUGER.

CALVIN M. MORROW, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, for respondent in 2017-1663.  Also represented by BRYAN G. POLISUK, KATHERINE M. SMITH.

MOLLIE LENORE FINNAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for intervenor in 2017-1535.  Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.; NADIA K. PLUTA, Office of General Counsel, United States Office of Personnel Management, Washington, DC; MORGAN E. REHRIG, Office of General Counsel, United States Postal Service, Washington, DC.

―――――――――――

Before DYK, HUGHES, and STOLL, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Derek Williams and Harris Winns, both former employees of the United States Postal Service, were removed from their positions at the agency. They both separately sought review of their removals by the Merit Systems Protection Board. Only certain federal employees, as defined by statute, however, can seek review at the Board. And in this case, the Board held that neither individual qualified as an "employee" with appeal rights under 5 U.S.C. § 7511(a)(1)(B)(ii). Because we agree with the Board's interpretation of § 7511, we affirm its dismissal of Mr. Williams's and Mr. Winns's respective cases.

As an alternative basis for Board jurisdiction, Mr. Williams contends that he retained appeal rights from a prior appointment because the U.S. Postal Service did not advise him on the loss of appeal rights that would result from his reappointment to a new position. We hold that an agency's failure to advise individuals on the potential loss of their appeal rights cannot create Board jurisdiction. Accordingly, we also affirm the Board's decision that Mr. Williams did not retain appeal rights from his prior appointment.

I

A

Mr. Winns is a preference-eligible veteran who worked at the Postal Service. Starting in 2011, Mr. Winns served a series of time-limited appointments, each lasting for less than a year. He was last appointed as a Postal Support Employee, which he started after a five-day break from a previous appointment. Mr. Winns was removed for alleged misconduct before he served a full year as a Postal Support Employee.

Mr. Winns appealed his termination to the Board and asserted whistleblower retaliation. The Board dismissed his appeal for lack of jurisdiction because Mr. Winns had

not completed one year of "current continuous service," and so did not qualify as an "employee" under § 7511(a)(1)(B)(ii). Mr. Winns appealed the dismissal to this court, where he argued that the Board's decision contradicted *Roden v. Tennessee Valley Authority*, 25 M.S.P.R. 363 (1984). In *Roden*, the Board held that an individual who worked in a series of temporary appointments could qualify as an "employee" under § 7511 based on a "continuing employment contract" theory. *Id.* at 367–68.

In response, the Board requested remand to consider whether *Roden* was still good law. We granted the Board's request. *Winns v. Merit Sys. Prot. Bd.*, No. 16-1206 (Fed. Cir. Apr. 25, 2016), ECF No. 25. On remand, the Board held that the Office of Personnel Management's (OPM) regulations superseded *Roden* and abrogated the "continuing employment contract" theory. *Winns v. U.S. Postal Serv.*, 124 M.S.P.R. 113, 117–21 (2017). The Board noted that 5 C.F.R. § 752.402 defines "current continuous employment" as "a period of employment or service immediately preceding an adverse action without a break in Federal civilian employment of a workday." *Id.* at 118. After § 752.402 was promulgated, OPM explained that the rule was intended to abrogate the "continuing employment contract" theory, stating in a response to public comment that:

> [T]he Board's holding in *Roden*, which characterized a series of temporary limited appointments for excepted service employees as a "continuing employment contract" and allowed brief breaks in service (as opposed to allowing no break) in computing current continuous service, was based, in large part, on OPM's earlier FPM guidance which was in effect at the time of the *Roden* decision. *This guidance was superseded by 5 C.F.R. [§] 752.402(b) which became effective on July 11, 1988. The regulation makes clear that OPM's pol-*

> *icy governing the computation of current continu-*
> *ous employment allows for no break in Federal ci-*
> *vilian employment.*

Reduction in Grade and Removal Based on Unacceptable Performance, 54 Fed. Reg. 26,172-01, 26,174 (June 21, 1989) (emphasis added). Based on § 752.402, the Board held that the series of temporary appointments held by Mr. Winns did not qualify as "continuous employment." *Winns*, 124 M.S.P.R. at 121. The Board thus held it lacked jurisdiction over his termination appeal. *Id.*

## B

Mr. Williams is also a preference-eligible veteran. He was appointed as a Rural Carrier Associate (RCA) by the U.S. Postal Service. While serving as a RCA, Mr. Williams applied, and was selected, for an appointment as a City Carrier Assistant (CCA). Both RCAs and CCAs are non-career positions. CCA positions are subject to a collective bargaining agreement. That agreement states that CCA positions are limited to "terms of 360 calendar days" and must "have a break in service of 5 days between appointments." J.A. in No. 17-1535 at 467.

Mr. Williams served as a RCA for around 22 months before he was reappointed to a CCA position. Under the collective bargaining agreement, Mr. Williams took a five-day break in service between his RCA and CCA positions. After serving three months as a CCA, Mr. Williams was involved in an automobile accident, and the Postal Service terminated his employment. Mr. Williams appealed his termination to the Board, and argued that the Postal Service violated his collective bargaining agreement and engaged in prohibited personnel practices.

The administrative judge dismissed Mr. Williams's appeal for lack of jurisdiction. Because of the five-day break in service between Mr. Williams's RCA and CCA appointments, the administrative judge determined that

Mr. Williams did not complete one year of continuous service, as required by § 7511(a)(1)(B)(ii). Accordingly, the administrative judge held that Mr. Williams was not a Postal Service employee with Board appeal rights. Mr. Williams petitioned for review of the initial decision, which the Board denied.

Mr. Williams appealed to this court. Under *Roden*, Mr. Williams argued that he was an "employee" with appeal rights because his appointment as a RCA should count towards the one year of "current continuous service" required by § 7511(a)(1)(B)(ii). As in Mr. Winns's appeal, the Board asked this court for a remand to reconsider *Roden*, and we granted the Board's request. *Williams v. Merit Sys. Prot. Bd.*, No. 16-1629 (Fed. Cir. June 22, 2016), ECF No. 19.

Because it had overruled the "continuing employment theory" in *Winns*, 124 M.S.P.R. at 117–21, the Board similarly concluded that it lacked jurisdiction over Mr. Williams's appeal. The Board also rejected Mr. Williams's argument that his five-day interruption between his RCA and CCA appointments did not constitute a "break in service" under § 752.402. In doing so, the Board relied on the ordinary meaning of "break" as "an interruption in continuity."

Alternatively, Mr. Williams argued that he retained his appeal rights from his RCA position under the *Exum* rule. In *Exum v. Department of Veterans Affairs*, the Board held that an employee could retain their appeal rights from a prior position if the agency fails to inform the employee that their change in position might result in a loss of appeal rights. 62 M.S.P.R. 344, 349 (1994). The Board, however, found that Mr. Williams did not satisfy the requirements under *Exum*. In particular, the Board found that Mr. Williams failed to show that "he *would not have accepted* his new position with the agency if he had known of the resulting loss of appeal rights." J.A. in No.

17-1535 at 12 (emphasis added). Instead, Mr. Williams testified only that he *did not know* whether he would have accepted the CCA position had he known about the potential loss of his appeal rights. J.A. in No. 17-1535 at 13.

Mr. Williams and Mr. Winns appeal the Board's dismissal of their respective claims. We have jurisdiction over both appeals under 28 U.S.C. § 1295(a)(9).

## II

We may set aside a decision of the Board if the decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Whether the Board has jurisdiction is a question of law that we review de novo. *See, e.g.*, *Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1147 (Fed. Cir. 1999).

## A

We start with the Board's interpretation of "current continuous service." Section 7511 defines "employee" for the provisions that give the Board jurisdiction over appeals by federal employees. *Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319, 1321 (Fed. Cir. 2012). The statute states that "'employee' means . . . a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions . . . in the United States Postal Service . . . ." § 7511(a)(1)(B)(ii). OPM's regulation in turn defines "current continuous employment" as "a period of employment or service immediately preceding an adverse action without a break in Federal civilian employment of a workday." 5 C.F.R.

§ 752.402.[1]   We conclude that OPM's regulation is a reasonable interpretation of the statute, and that the Board correctly applied OPM's regulation.

Congress authorized OPM to "prescribe regulations to carry out the purpose of th[e] subchapter" of the Civil Service Reform Act that includes § 7511.  5 U.S.C. § 7514; *accord Wilder*, 675 F.3d at 1322.  And OPM relied on notice-and-comment rulemaking to promulgate its regulation defining "current continuous service."  Adverse Actions, 53 Fed. Reg. 21,619-01, 21,623 (June 9, 1988).  Thus, we apply the two-step framework of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to determine whether OPM's regulation is permissible.  At *Chevron* step one, we consider whether Congress has directly spoken to the precise question at issue.  *Id.* at 842–43.  If Congress left no statutory ambiguity, then we must give effect to congressional intent.  *Id.*  But if the statute is silent or ambiguous, then, at step two, we determine whether the agency's regulation is permissible, and we must defer to the agency's reasonable interpretation of an ambiguous statute. *Id.* at 843.

At *Chevron* step one, we find that Congress did not speak directly to whether a series of temporary appointments, with short breaks in between, can count as "continuous service" under § 7511.  There is no definition of "current continuous service" in the statute.  Nor are we aware of any legislative history that tells us whether

---

[1]   The statute uses the term "service," whereas OPM's regulation uses the term "employment."  Despite this difference in terminology, we have treated OPM's regulation as interpreting the statutory term "current continuous service."  *Wilder*, 675 F.3d at 1321–22.  Neither party argues that the difference in terminology has any legal significance here.

Congress intended the statute to cover an individual who was employed through a series of temporary appointments.

Nevertheless, Mr. Williams contends the statute is clear that employment is "continuous" where both parties intend the employee to continue working from position to position, even if there are short breaks in between. To support this reading of the statute, Mr. Williams cites to Board decisions finding that a series of temporary appointments counts as "continuous service" under the "continuing employment contract" theory. *See, e.g.*, *Roden*, 25 M.S.P.R. at 368; *Melvin v. U.S. Postal Serv.*, 79 M.S.P.R. 372, 379 (1998). The Board's decisions, however, do not show that *Congress* intended "continuous service" to cover a series of temporary appointments. At best, these decisions show the *Board* has changed its interpretation of § 7511. But supposedly inconsistent Board decisions are not relevant here for purposes of determining congressional intent, nor was the Board charged with promulgating regulations to carry out the statute at issue. OPM is the agency so charged and it was OPM that promulgated 5 C.F.R. § 752.402, which further defined "continuous service." And it was OPM's regulatory definition that ultimately resulted in the Board's overruling of its "continuing employment contract" theory.

At *Chevron* step two, we find that OPM's interpretation of § 7511 is a permissible construction of the statute. OPM's regulation defines "current continuous employment" as "a period of employment or service immediately preceding an adverse action without a break in Federal civilian employment of a workday." 5 C.F.R. § 752.402. As the Board noted in reviewing the regulation, the ordinary meaning of "continuous" is "uninterrupted," "unbroken," or "marked by uninterrupted extension in space, time, or sequence." *Winns*, 124 M.S.P.R. at 119. Thus, OPM's definition is consistent with the common understanding of "continuous." We are unaware of any

legislative intent to depart from the plain meaning of the statutory text.

Mr. Williams further asserts that OPM's interpretation of § 7511 is not entitled to deference because it merely parrots the statute. It is true that "[a]n agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language." *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006). This is commonly known as the anti-parroting canon. Mr. Williams's reliance on this doctrine, however, is misplaced because OPM's regulation does more than paraphrase the statute. Section 7511 uses the term "continuous employment" without clarification. OPM's regulation defines the term as "without a break . . . *of a workday*." 5 C.F.R. § 752.402 (emphasis added). Mr. Williams argues the regulation is parroting because "without a break" and "continuous" are synonymous. But OPM's regulation does more than paraphrase—it also establishes the *break duration* that cuts off "continuous employment." Thus, § 752.402 clarifies an otherwise ambiguous statutory term.

The Board also did not err in applying § 752.402 to the appeals of Mr. Williams and Mr. Winns. It is undisputed that Mr. Williams took a five-day break between his RCA and CCA positions. Likewise, Mr. Winns started as a Postal Support Employee after a five-day break from a previous appointment. Neither Mr. Williams nor Mr. Winns qualified as an employee under OPM's regulation because they had a break in service of at least one workday. Thus, the Board was correct in finding that Mr. Williams and Mr. Winns did not meet the requirement of "current continuous service," as the term is defined by OPM.

B

Next, we turn to whether Mr. Williams has appeal rights before the Board under the *Exum* rule. In *Exum*, the Board held that an agency's failure to inform an employee that a voluntary change in position might lead to a loss of appeal rights could result in the retention of appeal rights. 62 M.S.P.R. at 349. Mr. Williams argues the *Exum* rule should apply to him because the Postal Service failed to notify him that his change from a position with appeal rights (RCA) to a position without such rights (CCA) would result in a loss of appeal rights. We reject this argument and the *Exum* rule. As we held in *Carrow v. Merit Systems Protection Board*, an agency's failure to advise federal employees on the terms of their appointment "does not create appeal rights for positions as to which Congress has not given the Board appellate jurisdiction." 626 F.3d 1348, 1353 (Fed. Cir. 2010).

The Board itself has limited the *Exum* rule to transfers within the same agency. *Park v. Dep't of Health & Human Servs.*, 78 M.S.P.R. 527 (1998). In *Park*, the Board explained that in intra-agency transfers, "the agency ha[s] all of the necessary information at hand to inform the appellant properly of the consequences of the acceptance of the new position." *Id.* at 534–35. By contrast, "a new employing agency may not possess and cannot be expected to have specific knowledge of the terms of the potential employee's previous employment. It should not have the same obligation to advise the employee of all possible consequences of changing positions." *Id.* at 535.

In *Carrow*, we confirmed that *Exum* does not apply to federal workers who transfer between agencies, but we relied on a different rationale than the Board. 626 F.3d at 1353–54. There, the appellant transferred from the Department of the Army to the Department of Veterans

Affairs, from which he was subsequently removed. *Id.*
We explained that:

> [The statute] does not give the Board jurisdiction
> over an appeal from a removal by a person who
> does not qualify as an "employee." . . . By statute,
> [the appellant's] position with the DVA did not
> carry Board appeal rights, and the DVA's failure
> to advise Mr. Carrow of the terms of his appoint-
> ment does not create appeal rights for positions as
> to which Congress has not given the Board appel-
> late jurisdiction.

*Id.* at 1353.  Because *Carrow* did not involve a federal
worker who transferred within the same agency, we
declined to "approve or disapprove the Board's rule in
*Exum* and its progeny" that an employee can retain
appeal rights from a prior position for an intra-agency
transfer. *Id.* at 1354.

Although *Carrow* involved an inter-agency transfer,
its rationale is equally applicable to transfers within the
same agency. Unlike the Board's decision in *Park*, our
reasoning did not depend on the agency's lack of
knowledge about the potential employee's previous ap-
pointment.  Instead, the dispositive issue was whether an
employee's position carries statutorily created appeal
rights.  *Id.*  The agency's failure to advise an employee
cannot create appellate jurisdiction for positions that do
not otherwise have appeal rights.  *Id.*  It makes no differ-
ence whether the employee transferred within the same
agency or to a different agency.  Thus, we specifically
disapprove the *Exum* rule, even for intra-agency trans-
fers, and hold that an agency's failure to inform an em-
ployee of the consequences of a voluntary transfer cannot
confer appeal rights to an employee in a position which
has no appeal rights by statute.

Our decision here is distinguishable from situations in
which an employee with appeal rights is coerced or de-

ceived into resigning or retiring.  *Covington v. Dep't of Health & Human Servs.*, 750 F.2d 937, 942 (Fed. Cir. 1984).  In those situations, our precedent makes clear that a seemingly voluntary act by an employee can be considered involuntary based on deceptive or coercive agency action.  *See, e.g.*, *id.*; *Middleton v. Dep't of Def.*, 185 F.3d 1374, 1383 (Fed. Cir. 1999).  And in those cases, we have held that an employee could exercise appeal rights to the Board.  *Id.*

By contrast, Mr. Williams made no allegation that he was misled or coerced into taking the new CCA position. He voluntarily applied, and was selected, for the CCA position.  Taking on a new position often leads to various changes in benefits.  The agency has no obligation to advise its employees of all the potential changes associated with a new job.  And certainly the agency's failure to advise its employee on the full range of consequences associated with a new position does not make the employee's decision to accept the position involuntary.

Conceivably, there may be situations in which an agency coerces or deceives an employee into accepting a new position.  We need not consider those scenarios here. Mr. Williams alleges only that the Postal Service failed to advise him on the loss of appeal rights that would result from his reappointment as a CCA.  We hold that the agency's failure to advise Mr. Williams does not allow him to retain appeal rights from a prior appointment.

## C

Finally, Mr. Williams argues that the Board's decision to overturn *Roden* violated his due process rights.  Specifically, Mr. Williams contends that he had a right to appeal as a federal employee based on the "continuing employment contract" theory in *Roden*.  By overturning *Roden* and applying its decision retroactively, Mr. Williams asserts that the Board deprived him of his property right to appeal his termination.

We are not persuaded by Mr. Williams's due process challenge. Property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Here, the appeal rights of federal employees are statutorily defined by § 7511. Although *Roden* broadly construed the term "continuous service" under § 7511, it did not create an independent basis for appeal or a separate property right in the "continuing employment contract" theory.

Because § 7511 only creates appeal rights for employees who have served continuously for more than one year, Mr. Williams relinquished any appeal rights he may have had at the RCA position when he accepted reappointment as a CCA. Thus, we find that the Board did not deprive Mr. Williams of his appeal rights when it dismissed his appeal for lack of jurisdiction.

### III

For the reasons above, we affirm the Board's dismissal of Mr. Williams's and Mr. Winns's cases for lack of jurisdiction.

**AFFIRMED**