**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| D'ANNA LAMINACK,<br>            Appellant, | DOCKET NUMBER<br>DA-0432-20-0177-I-1 |
| v. | |
| DEPARTMENT OF THE INTERIOR,<br>            Agency. | DATE:  July 6, 2022 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Richard R. Renner, Esquire and Sarah Martin, Esquire, Washington, D.C.,
    for the appellant.

Nanette Gonzales, Lakewood, Colorado, for the agency.

Okwede Okoh, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Limon recused himself and
did not participate in the adjudication of this appeal.

## REMAND ORDER

¶1      The agency has filed a petition for review and the appellant has filed a cross
petition for review of the initial decision, which reversed the agency's removal

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

action.  For the reasons discussed below, we GRANT the petition for review, VACATE the initial decision, DENY the cross petition for review, and REMAND the case to the Dallas Regional Office for further adjudication in accordance with this Remand Order and *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

¶2 The agency removed the appellant from her position of Environmental Education Specialist, under the authority of 5 U.S.C. chapter 43, based on her failure to demonstrate acceptable performance in two critical elements of her Employee Performance Appraisal Plan (EPAP).  Initial Appeal File (IAF), Tab 1 at 8-9, Tab 24 at 26-29, 65-70, Tab 56 at 4.  The appellant's EPAP set forth, within each of the five critical elements, the following four rating levels: Unacceptable; Fully Successful; Exceeds Expectations; and Outstanding.  IAF, Tab 24 at 140-60.

¶3 On appeal to the Board, the appellant asserted, among other things, that the agency's performance appraisal system was not approved by the Office of Personnel Management (OPM).  IAF, Tab 50 at 7-8, Tab 54 at 2.  She also claimed that the action was based on reprisal for equal employment opportunity (EEO) activity, disability discrimination, and reprisal for whistleblowing activity, and that the agency violated her due process rights.  IAF, Tab 1 at 4, Tab 13 at 5-19, Tab 18 at 2, Tab 50 at 16.  During the processing of this case, the administrative judge issued an order notifying the parties of a question as to "whether the appellant's FY [Fiscal Year] 2019 EPAP complies with the performance appraisal system that OPM approved, and, if not, the impact of this issue on the agency's performance-based action."  IAF, Tab 62 at 2.  The administrative judge afforded the parties an opportunity to submit written briefs on the issue.  *Id.*  Both parties filed responses to the order.  IAF, Tabs 63-65.

¶4      After a hearing, the administrative judge reversed the removal action. IAF, Tab 66, Initial Decision (ID) at 1, 36. She found that the agency did not prove by substantial evidence that OPM approved its performance appraisal system. ID at 12-15. In this regard, the administrative judge found that the OPM Form 1631, Performance Appraisal System Description, completed by the agency and approved by OPM, indicated that the agency had marked, or selected, all summary level patterns for possible use. ID at 13. A summary level pattern is an ordered category of performance levels, from Level 1 to Level 5, with 1 being the lowest and 5 being the highest. IAF, Tab 57 at 5. Each pattern identifies the number and category of summary levels used by an appraisal program. *Id.* Here, the agency marked or selected Patterns A (which includes only two summary levels) through H (which includes five summary levels). *Id.* The administrative judge found that the appellant's FY 2019 EPAP was consistent with the system in that the EPAP specified four levels for the summary rating (Outstanding, Exceeds Expectations, Fully Successful, and Unacceptable), and thus appeared to use Pattern E, one of the selected patterns. ID at 13.

¶5      Nevertheless, the administrative judge also noted that the agency was required to specify both the minimum and maximum number of element appraisal levels that it would use to appraise an employee's performance under each element. ID at 13. Here, the OPM Form 1631 indicated that there would be a minimum of five appraisal levels and a maximum of five appraisal levels. IAF, Tab 57 at 5. The administrative judge therefore found that "the appellant's FY 2019 EPAP fails to comply with the performance appraisal system that OPM approved in that it does not include the required minimum number of appraisal levels." ID at 13. The administrative judge acknowledged the agency's argument and evidence indicating that it made a clerical error on the form regarding the minimum number of appraisal levels, and that the clerical error did not reflect its intent in seeking OPM approval for the change. ID at 14. Nevertheless, she held that there was no record evidence showing that the agency meant "4" when it

entered "5" as the minimum number of appraisal levels, or that OPM approved the agency to implement four element appraisal levels. ID at 14. The administrative judge found that, even if the agency made an unintentional error on the form, "this does not obviate the fact that the appellant's 2019 EPAP fails to comply with the performance appraisal system approved by OPM." ID at 14. Thus, she found that the agency failed to establish by substantial evidence that, with regard to the appellant's EPAP, it had an OPM-approved performance appraisal system and that OPM approved the change from a five-tier to a four-tier system. ID at 15. Finally, the administrative judge found that the appellant did not prove her claims of a denial of due process, reprisal for EEO activity, disability discrimination, and reprisal for whistleblowing. ID at 10-11, 16-36.

¶6 The agency has petitioned for review of the initial decision, the appellant has responded to the petition, and the agency has replied to the appellant's response. Petition for Review (PFR) File, Tabs 1, 11, 13. The appellant has cross petitioned for review, to which the agency responded.[2] PFR File, Tabs 11, 17.

## ANALYSIS

¶7 In a performance-based action taken under 5 U.S.C. chapter 43, the agency bears the burden of proving the following by substantial evidence:[3] (1) OPM

---

[2] The appellant's cross petition for review, which we have denied, primarily addresses issues relating to her affirmative defenses. PFR File, Tab 11 at 22-48. As set forth below, because we vacate the initial decision, including the administrative judge's findings on the appellant's affirmative defenses, the administrative judge may consider the appellant's arguments in this regard, as well as the agency's contentions in its response to the cross petition for review, on remand.

The appellant also has filed a motion for leave to file a written transcript of the hearing in this case prepared by a private, independent, professional court reporter. PFR File, Tab 9. The audio recording of the hearing is the official hearing record. 5 C.F.R. § 1201.53(a). Under the circumstances of this case, we deny the appellant's motion.

[3] Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p).

approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) her performance standards are valid; (4) the agency informed her of the inadequacies of her performance and gave her a reasonable opportunity to demonstrate acceptable performance; and (5) her performance on one or more of the critical elements of her position remained unacceptable at the end of the improvement period. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010).

¶8      Congress provided for agency performance appraisal systems and their approval by OPM in the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111. *Adamsen v. Department of Agriculture*, 563 F.3d 1326, 1330 (Fed. Cir.), *modified on other grounds on rehearing*, 571 F.3d 1363 (Fed. Cir. 2009). Federal agencies are required to develop performance appraisal systems that provide for periodic appraisals of job performance of employees and permit removing employees who continue to have unacceptable performance, but only after an opportunity to demonstrate acceptable performance. *Id.* OPM "shall review each performance appraisal system developed by an agency . . . and determine whether the performance appraisal system meets the requirements of this subchapter." 5 U.S.C. § 4304(b)(1). If OPM "determines that a system does not meet the requirements of this subchapter . . . [it] shall direct the agency to implement an appropriate system or to correct operations under the system, and any such agency shall take any action so required." 5 U.S.C. § 4304(b)(3).

¶9      OPM's implementing regulations provide further guidance regarding agency performance appraisal systems. An agency appraisal system shall establish agencywide policies and parameters for the application and operation of performance appraisals within the agency for employees covered by the system. 5 C.F.R. § 430.204(b). At a minimum, an agency system shall, among other things, "[s]pecify the flexibilities an agency program established under the system has for setting . . . [t]he number(s) of performance levels at which critical and

non-critical elements may be appraised," and "[t]he pattern of summary levels that may be assigned in a rating of record." 5 C.F.R. § 430.204(b)(3)(iii)-(iv). Agency performance appraisal systems may include between two and five summary rating levels. *Jackson-Francis v. Office of Government Ethics*, 103 M.S.P.R. 183, ¶ 6 (2006); 5 C.F.R. § 430.208(d). Agencies shall submit to OPM for its approval a description of its appraisal system, 5 C.F.R. § 430.209(a), which OPM shall review and approve, 5 C.F.R. § 430.210(a).

¶10      An agency must implement performance appraisal plans that conform to requirements set forth in OPM's approval of its performance appraisal system. *See Salmon v. Social Security Administration,* 663 F.3d 1378, 1384-85 (Fed. Cir. 2011) (finding that the employee's performance plan was consistent with the framework approved by OPM); 5 C.F.R. § 430.205(a) (requiring each agency to establish at least one appraisal program "of specific procedures and requirements to be implemented in accordance with the applicable agency appraisal system").

¶11      An agency policy statement, like the agency's completed OPM Form 1631 here, that is neither published in the Federal Register nor binding on the public, only binds the agency if it so intended. *Farrell v. Department of the Interior*, 314 F.3d 584, 590 (Fed. Cir. 2002). The primary consideration in determining the agency's intent is whether the text of the statement indicates that it was designed to be binding on the agency. *Id.* at 591. We find that the provisions set forth in the OPM Form 1631, which do not relate to members of the public, are binding on the agency because the agency so intended and the form directly implements and interprets statutory and regulatory provisions, namely, certain provisions relating to 5 U.S.C. § 4304(b)(1) and 5 C.F.R. part 430, subpart B.

¶12      Further, because the form is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the . . . procedure . . . or practice requirements of an agency," we treat the form as a "rule," and apply the standards for interpreting such rules developed under the Board's case law. 5 U.S.C. § 551(4) (defining the

term "rule" under the Administrative Procedures Act (APA) as set forth here); *see Leiser v. Department of Justice*, 64 M.S.P.R. 543, 547-48 (1994) (treating a provision of the U.S. Attorneys' Manual as an interpretive rule because it comported with and interpreted statutory authority given to the Attorney General), *aff'd*, 64 F.3d 678 (Fed. Cir. 1995) (Table), *and overruled on other grounds by Hamlett v. Department of Justice*, 90 M.S.P.R. 674, ¶ 14 (2002); *Brooks v. Office of Personnel Management*, 59 M.S.P.R. 207, 210 n.4 (1993) (treating as rules certain Federal Personnel Manual provisions relating to military service that is creditable towards civilian service), *superseded by statute on other grounds as recognized in Johnson v. Office of Personnel Management*, 93 M.S.P.R. 265, ¶ 5 n.5 (2003).[4]  Agencies must comply with the procedures they set forth in their own rules or regulations.  *Ulep v. Department of the Army*, 120 M.S.P.R. 579, ¶ 4 (2014).

¶13      The appellant asserted below that the agency presented no evidence from anyone at OPM establishing what OPM understood the agency's performance appraisal system to be when OPM approved it.  PFR File, Tab 65 at 4-5.  She also asserted that the long-standing rule of contracts is that ambiguities are construed against the drafter, and that here, the agency drafted the OPM Form 1631; thus, the appellant claimed that any ambiguity regarding the minimum number of performance levels should be construed against the agency.  *Id.* at 5-6.

¶14      These arguments by the appellant presume that the OPM Form 1631 is a contract.  *See, e.g.*, *Harris v. Department of Veterans Affairs*, 142 F.3d 1463,

---

[4] In *Hamlet v. United States*, 63 F.3d 1097, 1105 (Fed. Cir. 1995), the court held that a statement in a Federal personnel manual or handbook, regardless of whether it was published under the standards set out in the APA, is a regulation entitled to the force and effect of law if the following requirements are met:  (1) the promulgating agency was vested with the authority to create such a regulation; (2) the promulgating agency conformed to all procedural requirements, if any, in promulgating the regulation; (3) the promulgating agency intended the provision to establish a binding rule; and (4) the provision does not contravene a statute.  To the extent that the court may require these more extensive elements, we find that they are met in this case.

1467 (Fed. Cir. 1998) (examining the parties' understanding in interpreting the words of a settlement agreement); *Weber v. Department of Agriculture*, 86 M.S.P.R. 25, ¶ 12 (2000) (considering the respective meanings given to the words by the parties in interpreting a settlement agreement). Although representatives from the agency and OPM signed the form, their signatures do not reflect the making of a contract. To have an enforceable contract, there must be consideration, i.e., a performance or a return promise that must be bargained for and does not involve the performance of a preexisting duty. *Black v. Department of Transportation*, 116 M.S.P.R. 87, ¶ 17 (2011); *see Beasley v. Office of Personnel Management*, 45 M.S.P.R. 333, 335-36 (1990) (holding that the formation of a binding contract requires a bargain in which there is a manifestation of mutual assent to an exchange and a consideration). Here, the appellant has identified no such consideration, nor is there a manifestation of mutual assent to an exchange between the agency and OPM. Instead, the agency's submission of the form to OPM and OPM's approval of the form merely carry out the requirements of the applicable statutes and regulations for the establishment of an agency performance appraisal system. Here, the agency head or designee "certif[ied]" with a signature that the appraisal system set forth in the form, all its related appraisal programs, and the use of the appraisal results conformed or would conform to applicable law and regulation and represented a "request" that OPM approve the appraisal system. IAF, Tab 57 at 6. The signature of OPM's "[a]pproving [o]fficial" merely reflects that "[t]his performance appraisal system has been reviewed in accordance with 5 U.S.C. § 4304(b)(1) and conforms to the requirements specified in 5 CFR part 430, subpart B." *Id.* Thus, we do not apply contract principles in ascertaining the meaning of the form in question.

¶15     Having found that the OPM Form 1631 functions as a "rule" for purposes of this appeal, we note that the rules of statutory construction apply when the Board interprets an agency rule or regulation. *Foret v. Department of the Army*,

105 M.S.P.R. 437, ¶¶ 3, 7, 9 (2007) (applying the rules of statutory construction to an agency's drug testing procedures); *Wilburn v. Office of Personnel Management*, 60 M.S.P.R. 19, 23 (1993) (applying a rule of statutory construction in interpreting OPM's guidance in the Federal Personnel Manual); *see Roberto v. Department of the Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006); *Spigner v. Department of the Air Force*, 96 M.S.P.R. 275, ¶ 14 (2004), *aff'd*, 143 F. App'x 336 (Fed. Cir. 2005); *cf. Special Counsel v. Campbell*, 58 M.S.P.R. 170, 180 (1993) (using the rules of statutory construction to interpret the meaning of regulations), *aff'd*, 27 F.3d 1560 (Fed. Cir. 1994); *Harris v. Department of State*, 24 M.S.P.R. 514, 517 (1984) (finding that general rules of statutory interpretation may be used in determining the meaning of regulations), *aff'd*, 785 F.2d 320 (Fed. Cir. 1985) (Table).

¶16        The starting point for interpreting the OPM Form 1631, therefore, is the language of the document itself to determine its plain meaning. *Roberto*, 440 F.3d at 1350. If the language is clear and unambiguous, the inquiry ends with the plain meaning. *Id.* A statute, rule, or regulation should be construed to give effect to every provision and must be construed in harmony, if possible. *Ochoa v. Department of the Navy*, 65 M.S.P.R. 39, 44 (1994). A section of a statute should not be read in isolation from the context of the whole act, and a court, in interpreting legislation, must not be guided by a single sentence or part of a sentence, but should look to the provisions of the whole law, and to its object and policy. *Joyce v. Department of the Air Force*, 83 M.S.P.R. 666, ¶ 14 (1999), *abrogated on other grounds by Cole v. Department of Justice*, 90 M.S.P.R. 627 (2001). If, however, the rule is silent or ambiguous, deference is given to the agency's own interpretation, particularly when it is reasonable and does not conflict with the governing statute, even if other interpretations are possible. *Roberto*, 440 F.3d at 1350; *see Winns v. U.S. Postal Service*, 124 M.S.P.R. 113, ¶ 13 (2017), *aff'd sub nom. Williams v. Merit Systems Protection Board*, 892 F.3d 1156 (Fed. Cir. 2018); *Sturdy v. Department of the Army*, 88 M.S.P.R. 502,

¶¶ 18-19 (2001) (giving deference to OPM's statement in an advisory opinion when the governing statute was silent and the implementing regulations were ambiguous on the issue to be resolved); *Phillips v Department of the Interior*, 95 M.S.P.R. 21, ¶ 9 (2003), *aff'd*, 131 F. App'x 709 (Fed. Cir. 2005). A regulation is ambiguous when it is susceptible to more than one plausible reading. *American Airlines, Inc. v. United States*, 551 F.3d 1294, 1300 (Fed. Cir. 2008); *see Pastor v. Department of Veterans Affairs*, 87 M.S.P.R. 609, ¶ 18 (2001) (A statute is ambiguous if it is susceptible of differing, reasonable interpretations.).

¶17        Here, section 3 of the OPM Form 1631, Summary Levels, provides that "[e]ach appraisal program under this system will use one, but only one, of the following patterns for assigning summary levels (mark all that apply)." IAF, Tab 57 at 5. The agency checked all of the patterns, including Pattern E, which corresponds to the four summary levels used by the agency in this case. *Id.* In response to the section 3 prompt, "[o]ther restrictions or requirements for using patterns or deriving summary levels," the agency marked "none." *Id.* Section 4 of the form, Element Appraisal, provides as follows: "[w]ithin the following parameters, each appraisal program will provide for establishing employee performance plans that include at least one critical element and, where applicable, non-critical element(s)." *Id.* It, too, indicates that there are no "[r]estrictions or requirements," yet it indicates that the minimum number of appraisal levels will be "5," while the maximum number of appraisal levels is "5." *Id.* We find that the OPM Form 1631 is internally inconsistent and ambiguous, as it appears in one section that OPM approved the agency to use all of the available patterns, including Pattern E, while another section seems to indicate approval of only Pattern H, which is the sole pattern that includes five summary levels. It is therefore susceptible of differing, reasonable interpretations.

¶18        When aid to the construction of the meaning of statutory words is available, there is no law that forbids its use. *Special Counsel v. Campbell*, 58 M.S.P.R. at 180. When the language of a statute is ambiguous, for example, it is

appropriate to consult the legislative history to determine Congressional intent. *Williams v. Department of the Army*, 83 M.S.P.R. 109, ¶ 11 (1999). Similarly, the Board may rely on the history of a regulation as an aid to its interpretation. *Klamm v. Department of Defense*, 97 M.S.P.R. 276, ¶ 8 (2004). In addition to the language of a statute, the Board may examine the statements of members of Congress interpreting the statute, and it is the Board's task to interpret the words of a statute in light of the purpose Congress sought to serve. *Swentek v. Office of Personnel Management*, 76 M.S.P.R. 605, 611 (1997); *Senior Executives Association v. Office of Personnel Management*, 67 M.S.P.R. 643, 651 (1995).

¶19　　Here, the history of the approval process for the OPM Form 1631, as well as the statements of those involved in seeking such approval, provide a useful aid to our interpretation of this ambiguous document. In this regard, we recognize that the Board has suggested that a "lack of clarity" regarding OPM's approval of an agency's appraisal system may be resolved by "examination of the OPM Form 1631," along with an affidavit or declaration from a credible witness with actual knowledge of the approval. *Adamsen v. Department of Agriculture*, 116 M.S.P.R. 331, ¶¶ 13-14 (2011). Indeed, probative hearsay evidence in this regard may meet the substantial evidence standard. *Id.*, ¶ 14. Under appropriate circumstances, an unrebutted declaration under penalty of perjury may prove the facts it asserts. *Id.*, ¶ 15.

¶20　　The record reflects that on June 29, 2018, the same date on which the agency head or designee signed the OPM Form 1631, the agency's Acting Deputy Assistant Secretary for Human Capital and Diversity wrote a letter to the Director of OPM requesting approval of the agency's "new performance appraisal system," which was reflected in the "enclosed OPM Form 1631." IAF, Tab 64 at 9. The letter indicates that the form "amends [the agency's] current appraisal system," which had previously been approved by OPM in 2005, and "affords [the agency] the greatest flexibility for designing an effective performance management program." *Id.* The letter further states that the agency sought only two changes,

one of which was to "the rating patterns (selecting all patterns for maximum flexibility)."[5]  *Id.*   It emphasizes that "the change in rating pattern is the motivating factor behind our seeking approval for a new system, as the prior approval was for a Pattern H system only and the agency is intending to move to Pattern E."  *Id.*  Pattern H has five performance levels, while Pattern E has four.  *Id.* at 10.   The letter concludes by informing OPM that the agency intends to implement the new system and program at the start of the next performance year in October 2018, pending approval.  *Id.* at 9.

¶21        OPM approved the performance appraisal system by signature on the OPM Form 1631 on August 14, 2018, and submitted a letter on the same day to the agency indicating that it was granting the agency's request "by letter dated June 29, 2018" for approval of its performance appraisal system.  IAF, Tab 57 at 4.   We find that this reference to the agency's June 29, 2018 cover letter indicates that OPM was aware that the agency's request was intended to move from Pattern H to Pattern E.  The record also includes an unrebutted declaration from the Director of the agency's Division of Workforce Relations within the Office of Human Capital.  IAF, Tab 64 at 13-14.  She avers that, in the summer of 2018, she worked with colleagues to develop the new appraisal system and helped update the OPM Form 1631 for submission and approval by OPM.  *Id.* at 13.  The Director indicated that "[t]he updated OPM form 1631 would depart from the previously submitted form by expanding the selection of the rating patterns," and that the agency "proposed selection of all rating patterns instead of the previous selection of only rating pattern H."  *Id.*  She further explained that the reason for the selection of all rating plans was to allow the agency maximum flexibility for developing performance plans, with the intention that the agency would apply only rating Pattern E for fiscal year 2019.  *Id.*  Finally, the Director wrote that,

---

[5] The other change the agency sought was to remove references to Board of Contract Appeals judges from its system.  IAF, Tab 64 at 9.  That requested change is not at issue in the instant appeal; therefore, we will not discuss it further.

when the form was edited by the agency, the only change made, as relevant here, was the selection of all rating patterns in section 3. *Id.* at 14. "No other changes were made to the document as our primary intention was to address the rating pattern at that time." *Id.*

¶22 Based upon our review of the above evidence and the circumstances behind the approval process for the agency's performance appraisal system, we interpret the OPM Form 1631 as approving the agency's use of Pattern E, which was the pattern used in this case. We therefore find that the agency has proven by substantial evidence that OPM approved the performance appraisal system under which the agency took the performance-based action in this case.[6] In any event, courts may permit the substitution of one word for another when, among other things, a word is the obvious result of a clerical error. 2A Shambie Singer & Norman Singer, Sutherland Statutory Construction § 47:36 (7th ed. 2021). Here, it is clear that the number "5" in section 4 of the OPM Form 1631, in the space for the minimum number of appraisal levels, is a clerical error that should have been a number "2" to provide maximum flexibility.

¶23 Having found that OPM approved the agency's appraisal system, we remand this appeal for consideration by the administrative judge of whether the agency met its burden on the other elements required to prove its case.

Remand is also necessary to afford the parties an opportunity to submit evidence and argument regarding whether the appellant's placement on a Performance Improvement Plan (PIP) was proper.

¶24 During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, that in addition to the five elements of the agency's case set forth in the initial decision, the agency must also justify the institution of a PIP by proving by substantial

---

[6] Put another way, there would therefore be no basis for finding on remand that the appellant's performance standards were invalid under the third element of the *Lee* test set forth above on the ground that they did not comply with the performance appraisal system approved by OPM.

evidence that the employee's performance was unacceptable prior to the PIP. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Although the record in this appeal may already contain evidence concerning the appellant's performance leading up to the PIP, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See id.*, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue and hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

¶25 The administrative judge shall then issue a new initial decision consistent with this Remand Order and *Santos*. *See id.* If the agency makes the additional showing required under *Santos* on remand that the appellant's performance in at least one critical element was at an unacceptable level prior to her placement on the PIP, the administrative judge shall make additional findings on the remaining elements of the agency's case, and may incorporate her prior findings on the appellant's affirmative defenses in the remand initial decision, as supplemented to address any new arguments raised by the appellant on review. *See id.* Regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the administrative judge's analysis of the appellant's affirmative defenses, she should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

**ORDER**

¶26      For the reasons discussed above, we remand this case to the Dallas Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                    /s/ for
                                                        Jennifer Everling
                                                        Acting Clerk of the Board

Washington, D.C.